United States District Court
Northern District of Texas
Dallas Division

| | |
|---|---|
| Marten Group, Inc. d/b/a Senergy Medical Group and Scott Tennant,<br><br>*Plaintiffs*<br><br>v.<br><br>Jerald Tennant, MD, John Tennant, Teresa Jessen Tennant, Jared Tennant, Tennant Devices and Accessories, LLC, and Curador, LLC,<br><br>*Defendants* | Case No. 3:24-cv-01852 |

**Plaintiffs' Response to Defendants' Emergency Motion for Protective Order**

Plaintiffs Marten Group, Inc. d/b/a Senergy Medical Group ("Senergy") and Scott Tennant (collectively, the "Senergy Parties") file this Response to Defendants Jerald Tennant, MD ("Dr. Tennant"), John Tennant, Teresa Jessen Tennant, Jared Tennant, Tennant Devices and Accessories, LLC ("TDA"), and Curador, LLC's ("Curador") (collectively, the "Dr. Tennant Parties") Emergency Motion for Limited Protective Order (the "Motion") [Dkt. #33] regarding the Senergy Parties' notice of deposition of Dr. Tennant.

## STATEMENT OF THE CASE

This case concerns the Senergy Parties' interest in the TENNANT BIO-MODULATOR, TENNANT BIOTRANSDUCER, and the HEALING IS VOLTAGE marks (the "Marks"). On July 18, Defendants Dr. Tennant and TDA sued the Senergy Parties in Dallas County for breach of contract and other non-trademark claims related to the sale of medical devices under the Marks.

On July 21, the Senergy Parties filed this suit seeking declaratory relief related to rights in these medical devices and Marks, cancellation of TDA's registrations for the Marks, tortious interference with Senergy's contracts with its manufacturer, and related claims.

On August 27, Dr. Tennant and TDA non-suited the state court lawsuit, and the Dr. Tennant Parties answered and filed counterclaims in this Court. The Dr. Tennant Parties assert 13 claims—essentially the non-suited state claims and five newly asserted trademark claims. On August 28, the Dr. Tennant Parties filed a Motion for Preliminary Injunction seeking to enjoin the Senergy Parties' use of the Marks. The Dr. Tennant Parties opposed any expedited discovery or extension of time to respond to the PI Motion. The Court granted the Senergy Parties' extension request, making their response to the PI Motion due October 18. The Senergy Parties' answer to the Dr. Tennant Parties' counterclaims is due October 8.

Rather than move for expedited discovery, the Senergy Parties served a notice of deposition on Dr. Tennant on September 17, the day of the Rule 26(f) conference. The deposition is currently scheduled for October 9 at 9:00 a.m. in person at the Dr. Tennant Parties' counsel's Dallas office.

# STATEMENT OF THE ISSUE

A party seeking a protective order must show—through particular and specific demonstrations of fact—good cause for why the court should protect it from "annoyance, embarrassment, oppression, or undue burden or expense." *See* FED. R. CIV. P. 26(c)(1); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). The potential harm must be "significant, not a mere trifle." *United States v. Planned Parenthood Fed'n of Am.*, 2:21-CV-022-Z, 2023 WL 8116198, at *4, n.12 (N.D. Tex. Aug. 4, 2023).

Dr. Tennant is a practicing physician living and working in the Dallas area. His counsel, Bryan Cave, is in Seattle and Dallas. Based on unsupported and vague allegations that he "does not have the stamina for a full-day deposition," and his lead counsel's location in Seattle, Dr. Tennant seeks a protective order limiting his deposition—which was noticed during the discovery period—to three hours beginning at 10:30 a.m. and conducted remotely. The Senergy Parties offered to (a) split the deposition into two days limited to 3.5 hours of testimony each day, (b) begin at 10:30 a.m. each day, (c) take the deposition at Dr. Tennant's office, (d) take as many breaks as needed, and (e) allow Dr. Tennant's Seattle counsel to appear remotely. Dr. Tennant declined these accommodations, except for taking the deposition at Dr. Tennant's office, for which the Dr. Tennant Parties' counsel has not responded as of the time of this filing.

Have the Dr. Tennant Parties shown—through particular and specific demonstrations of fact—good cause for why the court should protect it from annoyance, embarrassment, oppression, or undue burden or expense?

# BACKGROUND

1. **The Dr. Tennant Parties move for a preliminary injunction and oppose the Senergy Parties' requests for expedited discovery.**

Over a month after the Senergy Parties' filed suit, the Dr. Tennant Parties filed their Motion for Preliminary Injunction (the "PI Motion"), seeking to enjoin the Senergy Parties' alleged trademark infringement of the Marks. Dkt. #24. The PI Motion relies heavily upon Dr. Tennant's declaration. *See* Dkt. #25 at App. 001–19.

The Senergy Parties requested expedited discovery and for more time to brief their response. Dkt. #34 at App. 7. The Dr. Tennant Parties opposed. *Id.* at App. 6. The Court granted the Senergy Parties' motion for extension, making the response due October 18. Dkt. #27. The Dr. Tennant Parties remained opposed to expedited discovery. Dkt. #34 at App. 6.

2. **When discovery opens, the Senergy Parties serve a deposition notice and offer reasonable accommodations.**

Rather than file a motion for expedited discovery, the Senergy Parties decided the more efficient route was to wait a week until discovery opened and serve a traditional notice of deposition. During the September 17 Rule 26(f) conference, the Senergy Parties informed the Dr. Tennant Parties of the forthcoming notice, which they served later that day. The Dr. Tennant Parties did not raise any proposed limitations or concerns with the deposition (or depositions generally) during the Rule 26(f) conference.

Three days later, the Dr. Tennant Parties sent a letter to the Senergy Parties, claiming for the first time that because Dr. Tennant (a practicing physician) is 84

years old, the deposition should be limited to three hours to accommodate his inability to sit for extended periods of time. Dkt. #34 at App. 10. Their counsel also insisted the deposition be taken by Zoom "to better coordinate the deposition timing with [Dr. Tennant's] ongoing medical practice" and to reduce costs, "especially since lead counsel is located in Seattle." *Id.* Finally, the Dr. Tennant Parties' counsel requested the deposition begin at 10:30 a.m. to accommodate both Dr. Tennant's clinic schedule and Seattle counsel's time zone. *Id.* Other than his age and his trouble reading documents, the Dr. Tennant Parties cited no conditions that would hinder Dr. Tennant's ability to sit for deposition. *Id.* at App. 21. They also failed to provide any doctor's note or other evidence of Dr. Tennant's "inability to sit" condition.

The Senergy Parties attempted to compromise. They offered to split the deposition into two 3.5-hour sessions over two days and begin at 10:30 a.m. each day. Dkt. *Id.* These accommodations were refused, and the Dr. Tennant Parties filed their Motion. *Id.*

### 3. The Dr. Tennant Parties file the Motion, which seeks to shift their burden onto the Senergy Parties.

While Dr. Tennant's counsel intimated that the forthcoming motion would provide additional reasons to abridge Dr. Tennant's deposition, Dkt. #34 at App. 21, those reasons are absent from the Motion itself. It instead rehashes concerns over Dr. Tennant's stamina, the excessiveness of the deposition's duration (i.e., the 7-hour duration allowed by Rule 30(d)(1)), and lead counsel's travel costs to defend an in-person deposition. Dkt. #33. The Motion also attempts to shift blame to the

Senergy Parties, accusing them of engaging in "constant combat that simply drives up the costs and burden of litigation." *Id.* at App. 5.

But this burden is a problem of the Dr. Tennant Parties' own making. The Senergy Parties offered a solution that respected Dr. Tennant's practice and advanced age while also affording the Senergy Parties a full opportunity to depose a key party. But the Dr. Tennant Parties still rejected this proposal and manufactured this "emergency."

Following Judge Horan's Electronic Order [Dkt. #37], counsel for the parties conferred and attempted to resolve this dispute but were unsuccessful.

## ARGUMENT

The Dr. Tennant Parties fail to show good cause for the issuance of a protective order limiting Dr. Tennant's deposition. Amidst a slew of conclusory assertions of harm, the Dr. Tennant Parties give four main reasons to establish good cause:

1. They claim the deposition must start at 10:30 a.m. instead of 9:00 a.m. to accommodate the fact they chose to hire counsel located in the Pacific time zone for a case in this Court. Dkt. #33 at 7.

2. They claim the Senergy Parties only need 3 hours of deposition time to adequately respond to the PI Motion. *See, e.g., id.*

3. They assert (without evidentiary support) a 3-hour deposition is necessary because Dr. Tennant "does not have the stamina for a full-day deposition." *Id.* at 4.

4. They demand a remote deposition to protect their Seattle counsel from incurring the costs of traveling to and lodging in Dallas. *Id.* at 7.

The Dr. Tennant Parties fail to support these assertions with anything that rises above "stereotyped and conclusory statements." *See In re Terra*, 134 F.3d at 302. Even if true, these justifications are still "mere trifles" that do not qualify as good cause to issue a protective order. *See Cipollone*, 785 F.2d at 1121. Confusingly, the Dr. Tennant Parties seem to pawn off this burden to the Senergy Parties, noting how "Senergy could not articulate a clear basis for demanding Dr. Tennant incur such burden." Dkt. #33 at 7. This burden lies squarely with the Dr. Tennant Parties, and they fail to specify why the Senergy Parties' reasonable accommodations are unreasonable, oppressive, or unduly burdensome. They have not met their burden.

**Time.** Contrary to the Dr. Tennant Parties' assertion, the deposition notice is not "unlimited in time." The Dr. Tennant Parties confuse the "time" for deposition with its duration. Rule 26(c)(1)(B) concerns a court's power to fix the time *when* discovery can be conducted to avoid abuse. In any case, when the Dr. Tennant Parties complained the originally noticed time of 9:00 a.m. was too early and requested to begin at 10:30 a.m., the Senergy Parties acquiesced. *See* Dkt. #34 at App. 21. This issue is moot.

**Scope.** The Dr. Tennant Parties baldly argue "three hours of questioning is more than sufficient time to test the facts asserted in Dr. Tennant's supporting declaration." Dkt. #33 at 6. But discovery is open, so the deposition of Dr. Tennant is not limited in scope to the PI Motion, making this argument irrelevant.

**Duration.** As for duration, Rule 30(d)(1) limits a deposition to one day of seven hours unless otherwise stipulated or ordered by the court. The Senergy Parties were and are willing to split Dr. Tennant's deposition into two 3.5-hour sessions to

accommodate his age, despite no evidentiary proof it is medically necessary. Dkt. #34 at App. 21. They are also willing to take as many breaks as Dr. Tennant needs.

The Dr. Tennant Parties claim a 3-hour, remote deposition is necessary "to protect Dr. Tennant who is 84 years old and does not have the stamina for a full-day deposition, while also allowing him to plan around his ongoing clinical practice." Dkt. #33 at 4. The Motion then claims "Senergy disregarded the multiple justified bases for the proposal and rejected the reasonable accommodations." *Id.* But in the very next sentence, the Motion reveals the Senergy Parties' "rejection" was instead to replace a full-day deposition with two days of abridged 3.5-hour sessions starting at the requested later time, 10:30 a.m. *Id.* There is no evidence to support that Dr. Tennant can only sit for a 3-hour deposition, much less evidence to support that he cannot sit for an extra thirty minutes.

**In-Person.** It is still unclear what specific age-related conditions prevent Dr. Tennant—a practicing doctor located in Dallas—from attending an in-person deposition at his counsel's office on these terms. The Dr. Tennant Parties obliquely cite *Knuth v. Regional Transit Auth. of New Orleans*, No. 20-396, 2020 WL 6742800, at *4 (E.D. La. Nov. 17, 2020), which lists factors to evaluate the propriety of a remote deposition, including the deponent's age, physical condition, finances, and other factors that might result in extreme hardship. Dkt. #33 at 7. In fact, taking a closer look at the *Knuth*'s facts reveal the deponent there was "53 years old, [did] not have any relevant health conditions, and [was] not claiming financial hardship." 2020 WL 6742800, at *4. Instead, the deponent was "simply uncomfortable traveling during

COVID-19." *Id.* Even so, the court did not require her deposition by remote means. *Id.*

Since that time, courts have recognized "the pandemic has abated appreciably and the [CDC] has greatly reduced its protection guidance." *Hix-Hernandez v. Ford Motor Co.*, No. 1:20-CV-00029-RP2022, 2022 WL 1785621, at *3 (W.D. Tex. May 31, 2022). Absent a global pandemic, as put by Magistrate Judge Toliver, "[c]ourts have found live testimony far superior to video or telephone testimony and recognized that the ability to observe a party as he or she answer questions is an important aspect of discovery which the Court will not modify except in cases of extreme hardship." *Greco v. Nat'l Football League*, No. 3:13-CV-1005-M-BK, 2017 WL 11679599, at *2 (N.D. Tex. Mar. 30, 2017) (cleaned up).

Meeting this "extreme hardship" standard is extraordinarily high. Courts have denied remote depositions even where a physician's letter described the deponent's alleged poor health with "particular and specific demonstration[s] of fact." *EHO360, LLC v. Opalich*, No. 3:21-CV-0724-B, 2022 WL 18588064, at *1 (N.D. Tex. Oct. 17, 2022) (finding insufficient a doctor's note that deponent is not "functioning optimally"); *see also Campos v. Webb Cnty.*, 288 F.R.D. 134, 136 (S.D. Tex. 2012) (denying doctor's statement that the deposition would be "medically detrimental" for the plaintiff and cause a "full blown psychotic regression").

Here, the Motion cites no medical documentation of Dr. Tennant's age-related conditions that affect his ability to sit for an in-person versus remote deposition. But in conferring with counsel after the Court's October 2 Electronic Order [Dkt. #37], he communicated a Zoom deposition would reduce the burden on Dr. Tennant

because it would allow him to rest his eyes in his own office and save him travel time. In other words, it would take Dr. Tennant less time to travel from his home in Colleyville to his office in Irving (~30 minutes) than it would for him to drive from Colleyville to downtown Dallas (~45 minutes). The Senergy Parties, however, offered to take the deposition at Dr. Tennant's office, eliminating these concerns. Counsel for the Dr. Tennant Parties has not responded to this proposed as of the time of this filing.

As for the Dr. Tennant Parties' argument that the deposition should be conducted via remote means due to its Seattle counsel's travel costs, that issue is moot because the Senergy Parties offered to let Seattle counsel appear remotely. They declined, wanting all attendees to be remote. But it is worth noting "arguments focusing on counsels' convenience are less compelling than those concerning any hardship to the deponent." *Greco*, 2017 WL 11679599, at *2. And here, the Dr. Tennant Parties chose to hire lead counsel in Seattle and should bear the expense associated with that choice. Their counsel, Bryan Cave, also has an office in Dallas, and an attorney on this case located in Dallas.

## CONCLUSION

Plaintiffs respectfully request the Court deny the Motion. As stated above, however, they are willing to:

1. Conduct Dr. Tennant's deposition in-person at his office over two days, limited to 3.5 hours each day;

2. Start the depositions at 10:30 a.m.; and

3. Allow Dr. Tennant's Seattle counsel to attend the deposition remotely.

October 3, 2024                    Respectfully submitted,

**Griffith Barbee PLLC**

/s/ *Michael Barbee*
――――――――――――――――

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Kirk Voss
Texas Bar No. 24075229
Kirk.Voss@griffithbarbee.com

Joshua Yun
Texas Bar No. 24120335
Joshua.Yun@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 910
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**Counsel for Plaintiffs**

## CERTIFICATE OF WORD COUNT

The undersigned certifies this document contains 2,462 words, excluding the case caption, signature block, and certificates. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

**Dated**: October 3, 2024

/s/ *Michael Barbee*
Michael Barbee

## CERTIFICATE OF SERVICE

The undersigned certifies this document was filed electronically in compliance with Local Rule 5.1. As such, it was served on all counsel of record on October 3, 2024.

/s/ *Michael Barbee*
Michael Barbee