|  |  |
|---|---|
| MARTEN GROUP, INC. D/B/A SENERGY MEDICAL GROUP AND SCOTT TENNANT, *Plaintiffs* v. JERALD TENNANT, MD, JOHN TENNANT, TERESA JESSEN TENNANT, JARED TENNANT, TENNANT DEVICES AND ACCESSORIES, LLC, AND CURADOR, LLC, *Defendants* | Civil Action No. 3:24-cv-01852 |

### Plaintiffs' Motion to Dismiss Defendants Jerald Tennant, MD and Tennant Devices and Accessories, LLC's Counterclaims and Brief in Support

Plaintiffs Marten Group, Inc. d/b/a Senergy Medical Group ("Senergy") and Scott Tennant (collectively, the "Senergy Parties") file this Motion to Dismiss under Rules 12(b)(1) and (6), seeking dismissal of the following counterclaims [Dkt. #22]:

- Defendant Jerald Tennant, MD's counterclaims in Counts I, III, and IV under Rule 12(b)(1) for lack of standing; and

- Dr. Tennant and Defendant Tennant Devices and Accessories, LLC's Counts II, III, IV, VIII, IX, and XII under Rule 12(b)(6).

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................... iii

**STATEMENT OF THE CASE** ............................................. 1

**STATEMENT OF THE ISSUES** ......................................... 2

**SUMMARY** ................................................................... 5

    1.    Rule 12(b)(1) Standard ................................................ 6

    2.    Rule 12(b)(6) Standards ............................................... 6

**ARGUMENT** .................................................................. 7

    1.    Dr. Tennant lacks standing to bring his trademark-related claims. ................................................................. 7

        1.1.    Standing requirements under § 1114(1), § 1125(c), and Texas common law (Counts I, III, and IV) ................. 7

        1.2.    The USPTO records show Dr. Tennant does not own the Marks. ..................................................... 8

    2.    The Dr. Tennant Parties do not plausibly plead claims for unfair competition, dilution, quantum meruit, fraud and fraudulent concealment, and constructive trust and disgorgement. ................................................. 9

        2.1.    Count II: The Dr. Tennant Parties lack statutory standing under § 1125(a)(1). .................................. 9

        2.2.    Count II: Failure to establish falsity or misleading nature of the Senergy Parties' representations ............ 10

        2.3.    Counts III & IV: Failure to adequately allege fame for dilution ....................................................... 12

        2.4.    Count VIII: The quantum meruit claim fails because the Dr. Tennant Parties failed to plead the provision of services or materials ......................................... 14

        2.5.    Count IX: The Dr. Tennant Parties failed to plead fraud with particularity and to allege scienter. ........... 15

2.6. Count XII: Constructive trust is a remedy, not a cause
of action. ................................................................................ 17

**CONCLUSION** .............................................................**18**

# TABLE OF AUTHORITIES

## CASES

*Ace Am. Ins. Co. v. Huntsman Corp.*,
255 F.R.D. 179 (S.D. Tex. 2008).................................................6

*Adams v. Chase Bank*,
No. 3:14-CV-3157-K, 2015 WL 2168127
(N.D. Tex. May 8, 2015)...............................................15

*Amazing Spaces, Inc. v. Metro Mini Storage*,
608 F.3d 225 (5th Cir. 2010) ...........................................7

*Arquati v. Corradi USA, Inc.*,
No. 3:10-CV-0152-N, 2010 WL 11530860
(N.D. Tex. Dec. 29, 2010) ...............................................15

*Baker v. Great N. Energy, Inc.*,
64 F. Supp. 3d 965 (N.D. Tex. 2014) ..............................16

*Bashara v. Baptist Mem'l Hosp. Sys.*,
685 S.W.2d 307 (Tex. 1985)..............................................3

*Baxter v. PNC Bank Nat'l Ass'n*,
541 Fed. App'x 395 (5th Cir. 2013).................................17

*Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*,
550 F. Supp. 2d 657 (W.D. Tex. 2008) ..........................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .....................................................3, 11

*Dixon v. Bank of New York Mellon*,
No. 3:13–CV–4235–L, 2014 WL 2991742
(N.D. Tex. July 3, 2014)..............................................4, 17

*Everett v. TK–Taito*, LLC, 178 S.W.3d 844
(Tex. App.—Fort Worth 2005, no pet.) .......................17

*Fire Prot. Serv., Inc. v. Survitec Survival Prod., Inc.*,
    No. CV H-19-2162, 2024 WL 2946098
    (S.D. Tex. June 11, 2024) ................................................................. 9

*Gen. Universal Sys., Inc. v. Lee*,
    379 F.3d 131 (5th Cir. 2004) ........................................................... 11

*Granting Hands LLC v. Rad Exotics LLC*,
    No. 3:23-CV-02408-L, 2024 WL 3995404
    (N.D. Tex. July 31, 2024) ................................................................ 17

*Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*,
    No. 3:16-CV-2624-D, 2017 WL 495869
    (N.D. Tex. Feb. 7, 2017) ............................................................13, 14

*Hunter v. Branch Banking & Tr. Co.*,
    No. 3:12–CV–2437–D, 2013 WL 607151
    (N.D. Tex. Feb. 19, 2013) ................................................................. 6

*ICEE Distribs., Inc. v. J & J Snack Foods Corp.*,
    325 F.3d 586 (5th Cir. 2003) ............................................................. 7

*In re Moore*,
    608 F.3d 253 (5th Cir. 2010) ........................................................ 4, 17

*Jim Walter Homes, Inc. v. Reed*,
    711 S.W.2d 617 (Tex. 1986) ............................................................ 17

*Lamar Homes, Inc. v. Mid Continent Cas. Co.*,
    242 S.W.3d 1 (Tex. 2007) ............................................................... 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..................................................................... 2, 9

*LTS Grp. v. Woodcrest Cap., LLC*,
    222 S.W.3d 918 (Tex. App.—Dallas 2007, no pet.) ................................. 4, 15

*McArdle v. Mattel Inc.*,
    456 F. Supp. 2d 769 (E.D. Tex. 2006) .............................................10, 11

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ............................................................. 6

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) ........................................................ 12

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ..................................................... 6, 7

*Roach v. Berland*,
    No. 3:13–CV–4640–D, 2014 WL 6772612
    (N.D. Tex. Dec. 2, 2014) ............................................................ 17

*Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*,
    520 F.3d 393 (5th Cir. 2008) ................................................... 3, 12

*Shippitsa Ltd. v. Slack*,
    No. 3:18-CV-1036-D, 2019 WL 3304890
    (N.D. Tex. July 23, 2019) ......................................................... 3, 13

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*,
    No. 3:17-CV-0054-B, 2018 WL 1806500
    (N.D. Tex. Apr. 17, 2018) ........................................................... 13

*Stockman v. Fed. Election Comm'n*,
    138 F.3d 144 (5th Cir. 1998) ......................................................... 6

*TGI Friday's Inc. v. Great Nw. Rests., Inc.*,
    652 F. Supp. 2d 763 (N.D. Tex. 2009) ............................................. 7

*Tuchman v. DSC Commc'ns Corp., et al.*,
    14 F.3d 1061 (5th Cir. 1994) .................................................... 4, 16

*Varsity Spirit LLC v. Varsity Tutors, LLC*,
    No. 3:21-CV-0432-D, 2021 WL 9893514
    (N.D. Tex. Sept. 17, 2021) ................................................. 2, 8, 13, 14

*Williams v. Bell Helicopter Textron Inc.*,
    417 F.3d 450 (5th Cir. 2005) ....................................................... 16

## STATUTES

15 U.S.C. § 1114 ............................................................................. 7

15 U.S.C. § 1125 ............................................................................. 7

TEX. BUS. & COM. CODE § 16.103 .................................................. 8

# STATEMENT OF THE CASE

This case concerns the Senergy Parties' interest in the TENNANT BIO-MODULATOR, TENNANT BIOTRANSDUCER, and the HEALING IS VOLTAGE trademarks (the "Marks"). The Senergy Parties filed this suit seeking declaratory relief related to rights in these Marks and the medical devices that bear them (the "Devices"), cancellation of TDA's registrations for some of the Marks, tortious interference with Senergy's contracts with its manufacturer, and related claims.

Defendants Jerald Tennant, MD ("Dr. Tennant") and Tennant Devices and Accessories, LLC ("TDA") (collectively, the "Dr. Tennant Parties") filed 13 counterclaims: trademark infringement under 15 U.S.C. § 114 (**Count I**); unfair competition under 15 U.S.C. § 1125 (**Count II**); dilution under 15 U.S.C. § 1125(c) (**Count III**); common law trademark infringement, unfair competition, and dilution (**Count IV**); common law misappropriation of name or likeness (**Count V**); breach of contract (**Count VI**); promissory estoppel (**Count VII**); quantum meruit (**Count VIII**); fraud and fraudulent concealment (**Count IX**); money had and received (**Count X**); accounting (**Count XI**); constructive trust and disgorgement (**Count XII**); and permanent injunction (**Count XIII**).

The Senergy Parties now file this Motion to Dismiss (the "Motion"), seeking to dismiss Dr. Tennant's counterclaims in Counts I, III, and IV under Rule 12(b)(1) for lack of standing. The Senergy Parties also seek dismissal of Counts II, III, IV, VIII, IX, and XII under Rule 12(b)(6) for failure to state a claim.

# STATEMENT OF THE ISSUES

**Rule 12(b)(1)**

1.　To establish standing for federal and state trademark-related claims, Dr. Tennant must plausibly plead he owns the trademarks in question. *See Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-CV-0432-D, 2021 WL 9893514, at *6 (N.D. Tex. Sept. 17, 2021). But USPTO records for the Marks indicate Dr. Tennant does not own the Marks—TDA does. Does Dr. Tennant have standing to assert his federal claims for trademark infringement (**Count I**) and dilution (**Count III**), and trademark infringement, unfair competition, and dilution under Texas common law (**Count IV**)?

**Rule 12(b)(6)**

1.　The Dr. Tennant Parties must have statutory standing—a merits-based inquiry proper for 12(b)(6) analysis—to bring their unfair competition claim under § 1125. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). To establish statutory standing, the Dr. Tennant Parties must plead an economic or reputational injury flowing directly from the Senergy Parties' alleged deception. *Id.* Do Dr. Tennant and TDA, neither of whom plead their sale or manufacturing of the Devices, sufficiently demonstrate an economic or reputational injury to avoid dismissal of their unfair competition claim (**Count II**)?

2.　Passing-off actions under § 1125(a)(1) require proof that a defendant used a "false designation of origin" of "goods or services." *See* 15 U.S.C. § 1125(a)(1). "Origin of goods" means the physical producer of tangible products

marketed and sold. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). The Dr. Tennant Parties fail to allege any statements or representations indicating a false designation of origin, nor do they allege they are the physical producers of the Devices. Do the Dr. Tennant Parties state a plausible passing off claim (**Count II**)?

3.      False advertising under § 1125(a)(1)(B) requires proof of a false or misleading statement of fact about a product and the material deceptiveness of that statement. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 400 (5th Cir. 2008). The Dr. Tennant Parties identify statements by the Senergy Parties that merely indicate Senergy's efforts to assist customers with purchases of the Devices, and conclusorily allege the material deception of these statements. Do the Dr. Tennant Parties plead a viable false advertising claim (**Count II**)?

4.      To state a dilution claim under federal or Texas law, the Dr. Tennant Parties must establish the Marks' fame by showing the general consuming public recognizes the Marks, either throughout the United States (for the federal law claim) or throughout the state of Texas (for the state law claim). *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 WL 3304890, at *11 (N.D. Tex. July 23, 2019). Do the Dr. Tennant Parties' conclusory allegations regarding the Marks' fame state a claim for dilution (**Counts III and IV**)?

5.      Quantum meruit requires the Dr. Tennant Parties to render valuable services or materials to the Senergy Parties, which Senergy accepted, used, and enjoyed. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). Those services or materials cannot be rendered to obtain some future business advantage

or opportunity. *LTS Grp. v. Woodcrest Cap., LLC*, 222 S.W.3d 918, 921 (Tex. App.—Dallas 2007, no pet.). Do the Dr. Tennant Parties state a valid quantum meruit claim (**Count VIII**) when they fail to identify the provision of services or materials to Senergy, and when the services or materials were given for a future advantage—to monetize intellectual property rights through a third-party manufacturer?

6.      Rule 9(b) requires fraud claims to be pleaded with particularity. *Tuchman v. DSC Commc'ns Corp., et al.*, 14 F.3d 1061, 1067–68 (5th Cir. 1994). But the Dr. Tennant Parties fail to identify the "who, what, when, where, and how" of the alleged fraud. Do the Dr. Tennant Parties' conclusory allegations of fraud (**Count IX**) meet Rule 9(b)'s heightened pleading requirement?

7.      Under Texas law, the economic loss rule bars recovery in tort for economic losses resulting from the failure to perform under a contract. *Dixon v. Bank of New York Mellon*, No. 3:13–CV–4235–L, 2014 WL 2991742, at *6 (N.D. Tex. July 3, 2014). The Dr. Tennant Parties' fraud-based damages are directly related to the alleged underpayment of royalties and arise from the contractual relationship via the Royalty Agreements. Does the economic loss rule bar the Dr. Tennant Parties' fraud claims (**Count IX**)?

8.      A constructive trust is not a cause of action under Texas law. *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010). The Dr. Tennant Parties refashion a remedy as a distinct cause of action. Should the Court dismiss the Dr. Tennant Parties' "claim" for constructive trust and disgorgement (**Count XII**)?

## SUMMARY

Dr. Tennant's trademark-based claims (Counts I, III, and IV) should be dismissed for lack of standing because the USPTO records for the Marks show Dr. Tennant does not own the Marks—TDA does.

The Dr. Tennant Parties also cannot plausibly plead claims under Rule 12(b)(6) for unfair competition (Count II). The Dr. Tennant Parties fail to establish a direct injury stemming from the Senergy Parties' alleged infringement of the Marks and sale of the Devices, thereby failing to meet § 1125's statutory standing requirements. The Dr. Tennant Parties' § 1125 unfair competition claims fail to allege the Senergy Parties' false designation of the Devices' origin—and the Dr. Tennant Parties also fail to allege they are the Devices' physical producers. The unfair competition claim is also non-cognizable because the Dr. Tennant Parties do not identify a materially deceptive false statement, other than with conclusory allegations.

The Dr. Tennant Parties likewise ground their dilution claims (Counts III and IV) with vague conclusions of the Marks' fame, insufficient to avail both their federal and state dilution claims from dismissal.

Their quantum meruit claim (Count VIII) also fails to identify any valuable services or materials rendered to Senergy—and in any case, services or materials rendered to monetize the Marks' use in the future cannot support a quantum meruit claim.

The Dr. Tennant Parties also fail to plead their fraud-based claims (Count IX) with the heightened particularity required by Rule 9(b). Still, their claims of fraud

and fraudulent inducement, whose harms arise directly from the parties' contractual performance, are barred by the economic loss doctrine.

And the Dr. Tennant Parties cannot plead constructive trust and disgorgement (Count XII), a mode of relief, as a cause of action under Texas law.

## LEGAL STANDARDS

### 1.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Facial Rule 12(b)(1) challenges look "only at the sufficiency of the allegations in the pleading and assumes them to be true." *Hunter v. Branch Banking & Tr. Co.*, No. 3:12–CV–2437–D, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). If the allegations are insufficient to allege jurisdiction, the court must dismiss the challenged claims. *See id.* For a Rule 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Here, analysis is properly limited to the pleadings, attachments, and matters appropriate for judicial notice. *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 209 (S.D. Tex. 2008).

### 2.    Rule 12(b)(6) Standards

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief can be granted. While the Court must take as true all well-pleaded allegations, a complaint must contain "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must "raise a right to relief above the speculative level." *Id.* But dismissal is proper if the well-pleaded facts do not amount to a cognizable legal theory. *Ramming*, 281 F.3d at 161.

## ARGUMENT

### 1.     Dr. Tennant lacks standing to bring his trademark-related claims.

Dr. Tennant lacks standing to assert trademark infringement under 15 U.S.C. § 1114 (Count I); dilution under 15 U.S.C. § 1125(c) (Count III); and trademark infringement, unfair competition, and dilution under Texas common law (Count IV). *See* Dkt. #22, 36–40.

#### 1.1.     Standing requirements under § 1114(1), § 1125(c), and Texas common law (Counts I, III, and IV)

Dr. Tennant must establish ownership of a trademark to have standing to sue under 15 U.S.C. § 1114(1). *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009). The same is true for a dilution claim under § 1125(c)(1). *See* 15 U.S.C. § 1125(c)(1) ("[T]he *owner* of a famous mark . . . shall be entitled to an injunction.") (emphasis added); *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 599 (5th Cir. 2003) ("Because [plaintiff] is not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under the Dilution Act."). Trademark ownership is also required to bring a claim for trademark infringement and dilution under Texas law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair

competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.") (internal quotation marks omitted); *see* TEX. BUS. & COM. CODE § 16.103 ("[T]he *owner* of a mark that is famous . . . is entitled to enjoin another person's commercial use of a mark or trade name.") (emphasis added).

### 1.2. The USPTO records show Dr. Tennant does not own the Marks.

To establish standing, the Dr. Tennant Parties must plausibly plead they own the trademarks in question. *See Varsity Spirit*, 2021 WL 9893514, at *6. In *Varsity Spirit*, three plaintiffs—Varsity Spirit, Varsity Brands, and Varsity Spirit Fashions—brought trademark claims under federal and Texas law. *Id.* at *3. Their complaint alleged their ownership of the marks at issue. *Id.* at *5. But this Court took judicial notice that "Varsity Brands and Varsity Spirit Fashions do not, in fact, own these trademarks" based on USPTO records. *Id.* Thus, this Court dismissed for lack of standing the claims of these plaintiffs under § 1114(1), § 1125(c), and for trademark infringement, unfair competition, and trademark dilution under Texas law because they did not plausibly plead that they own the trademarks in question. *Id.* at *6.

Here, Dr. Tennant and TDA do not clearly identify who owns the Marks. Instead, they ambiguously assert they "registered their trademarks with the [USPTO] on the Principal Register." Dkt. #22 ¶ 17. They also assert they "are the sole owners of the Tennant Marks." *Id.* ¶ 80. Regardless, USPTO records for the Marks show Dr. Tennant does not own the Marks—TDA does. *See* Ex. 1 at App. 1–3 (assignment of title for TENNANT BIOMODULATOR); *see also* Ex. 2 at App. 4–9 (assignment

of title for TENNANT BIOTRANDUCER and HEALING IS VOLTAGE). Thus, the Court should dismiss Dr. Tennant's trademark claims.

**2.  The Dr. Tennant Parties do not plausibly plead claims for unfair competition, dilution, quantum meruit, fraud and fraudulent concealment, and constructive trust and disgorgement.**

### 2.1. Count II: The Dr. Tennant Parties lack statutory standing under § 1125(a)(1).

The Dr. Tennant Parties also lack statutory standing to bring their unfair competition claim under § 1125(a)(1).[1] Here, the Dr. Tennant Parties must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Fire Prot. Serv., Inc. v. Survitec Survival Prod., Inc.*, No. CV H-19-2162, 2024 WL 2946098, at *5 (S.D. Tex. June 11, 2024) (quoting *Lexmark*, 572 U.S. at 133).

In *Fire Protection*, the court dismissed § 1125(a) claims for failure to cure standing deficiencies. *Id.* at *6. At the summary judgment stage, the claimant submitted declarations that offered "only conclusory statement on the question of injury," merely positing it "likely has been damaged by Fire Protection's outsourcing." *Id.* (cleaned up). But the claimant did "not manufacture or directly sell the products at issue and cannot provide evidence of any injury." *Id.* Thus, it could not meet its standing threshold. *Id.*

---

[1]  While courts have often styled this "statutory standing" as a question of federal court subject matter jurisdiction, the Supreme Court has opined that the proper procedural device to challenge statutory standing is a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

Here, even at the pleadings stage, the Dr. Tennant Parties fail to establish any plausibly pleaded commercial injury that flows from the Tennant Parties' alleged misconduct. Like in *Fire Protection*, neither Dr. Tennant nor TDA plead they manufacture or sell the products bearing the Marks. Indeed, they acknowledge "Scott would be able to use Dr. Tennant's brand to sell Dr. Tennant's innovative products." Dkt. #22 ¶ 32; *see, e.g., id.* ¶¶ 33, 37, 41 (alleging Dr. Tennant's grant of rights and licenses to the Senergy Parties to sell medical devices bearing the Marks to consumers and practitioners). The Dr. Tennant Parties never assert they—or any other licensed third parties—sell and manufacture the at-issue devices. They only vaguely acknowledge the "products bearing the Tennant marks are offered and sold in commerce." Dkt. #22 ¶ 25. Thus, their assertion the alleged consumer confusion "will also cause a diversion of sales from and/or royalties owed" has no factual support. *See* Dkt. #22 ¶ 65. At bottom, the Dr. Tennant Parties suffered no loss in sales because they do not sell the Tennant Devices. Thus, the Court should dismiss the unfair competition claim.

## 2.2. Count II: Failure to establish falsity or misleading nature of the Senergy Parties' representations

The Dr. Tennant Parties' unfair competition claim—which sounds in reverse passing-off and false advertisement—is also deficient because it fails to establish the falsity of the Senergy Parties' statements or representations.

"Passing off" occurs when a producer misrepresents his own goods or services as someone else's. *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006). "Reverse passing off" is the opposite: the producer misrepresents someone

else's goods or services as his own. *Id.* Passing off actions require proof a defendant used a "false designation of origin" of "goods or services." *See* 15 U.S.C. § 1125(a)(1). The key component of passing off claims is false designation of the "origin of goods." *Id.* (citing *Dastar*, 539 U.S. at 33–34). "Origin of goods" means the physical producer of tangible products marketed and sold. *Dastar*, 539 U.S. at 37. The term does not connote the person or entity that originated the ideas, concepts or communications embodied in goods. *Id.* at 37; *see also Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir. 2004).

In *McArdle*, the court dismissed a passing off claim because the plaintiff never alleged he physically produced the tangible goods at issue. *McArdle*, 456 F. Supp. 2d at 784. Neither did the plaintiff there allege the defendant "obtained goods physically produced by plaintiff and then represented those goods as [the defendant's]." *Id.*

Here, the Dr. Tennant Parties also do not sufficiently plead any of the Senergy Parties' alleged statements or representations that constitute a false designation of origin. Indeed, the only identified statements indicate Senergy's website allegedly contains pages describing "Senergy's recommended BioModulator and BioTransducer packages," the educational services of "Senergy Advisors" that assist customers with Tennant device purchases, and customer testimonials ("Senergy Stories") reviewing their experience with Tennant devices. Dkt. #22 ¶ 60. None of these allegations indicate the Senergy Parties' passing off the devices as their own. However, the Dr. Tennant Parties stop short of pleading they themselves physically produce the devices. The § 1125(a)(1) passing off claim accordingly fails.

The unfair competition claim also tracks the language of § 1125(a)(1)(B), which requires proof of five elements: "(1) false or misleading statement of fact about a product; (2) the statement deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception was material; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Schlotzsky's*, 520 F.3d at 400. The plaintiff must first demonstrate the advertisement was (1) literally false; or (2) likely to mislead and confuse customers. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). If the statement is misleading or ambiguous, the plaintiff must eventually demonstrate actual deception through direct evidence of consumer reaction to the advertising or evidence of consumer surveys or consumer reaction tests. *Id.*

Again, the Senergy Parties' alleged statements are neither false nor misleading—at most, they merely constitute customer support. Dkt. #22 ¶ 60. Regardless, the Dr. Tennant Parties do not present any particularized facts regarding the effect of the Senergy Parties' alleged deception. The Dr. Tennant Parties instead default to conclusory statements, claiming the Senergy Parties "actually deceive, or have a tendency to deceive, a substantial segment of [the parties'] customers and potential customers." Dkt. #22 ¶ 75. Without more, these conclusions fail to satisfy Rule 12(b)(6).

### 2.3. Counts III & IV: Failure to adequately allege fame for dilution

The Dr. Tennant Parties fail to plausibly plead dilution under either federal or state law because they have not adequately pleaded that the Marks are famous. To

state a dilution claim, the Dr. Tennant Parties must show they "own[] a famous mark that is distinctive." *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 673 (W.D. Tex. 2008). To be famous, the mark must be "*widely recognized by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). Federal law "restrict[s] dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, at *4 (N.D. Tex. Apr. 17, 2018). Contrarily, "fame only in a limited geographic area or niche market will not support a federal dilution claim." *Id.* at *4.

Under Texas dilution law, the fame analysis is like its federal-law counterpart, but with a different geographical focus. *See, e.g., id.* at *6 ("[Plaintiff's] Texas dilution claim fails for the same reason its federal dilution claim fails."). To establish fame, the claimant must allege facts "showing that members of the general consuming public recognize its mark, either throughout the United States (for [the] federal-law claim) or throughout the state of Texas (for its state-law claim)." *Shippitsa*, 2019 WL 3304890, at *11. But a claimant cannot establish fame with "legal conclusions that are devoid of the factual content necessary to plead a plausible claim." *See Hillstone Rest. Grp., Inc. v. Hillstone Mgmt.*, LLC, No. 3:16-CV-2624-D, 2017 WL 495869, at *2 (N.D. Tex. Feb. 7, 2017).

This Court's precedent is instructive. In *Varsity Spirit*, this Court held Varsity did not plausibly allege a famous mark, despite pleading it nationally televises promotions of its mark. *Varsity Spirit LLC*, 2021 WL 9893514, at * 20. Allegations of

broadcasts reaching "countless athletes and their families and fans" were too niche to establish the requisite level of the "general consuming public." *Id.* Likewise, in *Hillstone*, this Court rejected conclusory allegations that a mark was "famous in that it is widely recognized in the Dallas-Fort Worth metropolitan area and throughout Texas" and "known to consumers in the Dallas area due to its operation of other restaurants there . . ." *Hillstone Rest. Grp.*, 2017 WL 495869, at *2–3.

Here, the Dr. Tennant Parties' "fame" allegations are more threadbare than those in *Varsity Spirit* and *Hillstone*. They merely assert "Dr. Tennant and his company, TDA, have developed name recognition and goodwill among practitioners and consumers in the medical devices market through the Tennant Marks." Dkt. #22 ¶ 26. They further allege their "products have been met with popular approval and the public is familiar with the Tennant Marks." Dkt. #22 ¶ 27. The remaining allegation merely recites the legal element of dilution— the Marks "are famous and distinctive and widely recognized by the public throughout the United States as being recognizable and affiliated with Dr. Tennant . . . ." Dkt. #22 ¶ 81. Those allegations fail to state a plausible claim for niche fame in a limited geographical area, much less national fame. Thus, because the Dr. Tennant parties' fail to plead facts supporting fame, the Court should dismiss both dilution claims.

### 2.4. Count VIII: The quantum meruit claim fails because the Dr. Tennant Parties failed to plead the provision of services or materials

The Dr. Tennant Parties' quantum meruit claim fails because they did not plead they provided "valuable services or materials." Quantum meruit requires the

Dr. Tennant Parties to render valuable services or materials to Senergy, which Senergy accepted, used, and enjoyed. *Bashara*, 685 S.W.2d at 310 (listing elements).

But the Dr. Tennant Parties plead themselves out of the claim—they allege they "provided [the Senergy Parties] with *the rights and license* to market [the Dr. Tennant Parties'] products." Dkt. # 22 ¶ 110 (emphasis added). Those intangible rights are neither materials nor services. *See, e.g., LTS Grp.*, 222 S.W.3d at 921 (financial data and "proprietary information" on prospective purchase of building did not support action for quantum meruit); *cf. Arquati v. Corradi USA, Inc.*, No. 3:10-CV-0152-N, 2010 WL 11530860, at *4 (N.D. Tex. Dec. 29, 2010) (intellectual property rights cannot serve as the basis for a claim for conversion). And failure to plead the Dr. Tennant Parties' provision of services or materials should result in dismissal. *Adams v. Chase Bank*, No. 3:14-CV-3157-K, 2015 WL 2168127, at *6 (N.D. Tex. May 8, 2015). Further, even if intangible rights could qualify as "materials," Dr. Tennant provided those for a future business advantage or opportunity—the monetization of intellectual property rights through a third-party manufacturer. That arrangement cannot support a quantum meruit claim. *LTS Grp.*, 222 S.W.3d at 921.

### 2.5.    Count IX: The Dr. Tennant Parties failed to plead fraud with particularity and to allege scienter.

To state a fraud claim under Texas law, the Dr. Tennant Parties must plausibly set forth the following elements: (1) the Senergy Parties made a representation to them; (2) the representation was material; (3) the representation was false; (4) when the Senergy Parties made the representation they knew it was false or made the representation recklessly and without knowledge of its truth; (5) the Senergy Parties

made the representation with the intent that the Dr. Tennant Parties act on it; (6) the Dr. Tennant Parties relied on the representation; and (7) the representation caused the Dr. Tennant Parties' injury. *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972 (N.D. Tex. 2014).

Rule 9(b) requires fraud claims to be pled with particularity, which differs with the facts of each case. *Tuchman*, 14 F.3d at 1067–68. First, the rule requires the Dr. Tennant Parties to set forth the "who, what, when, where, how" of the alleged fraud. *Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Rule 9(b) requires "the particulars of time, place, and contents of false representations as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman*, 14 F.3d at 1068. Second, although the rule allows *scienter* to be pled generally, the rule still requires "specific facts to support an inference of fraud." *Id.*

The Dr Tennant Parties fail to meet Rule 9's particularity requirement. They fail to identify the who, what, when, where, and how of the allege fraud. Instead, they merely allege the Senergy Parties "misrepresented and concealed facts related to the total sales of [Dr. Tennant Parties'] products." Dkt. #22. At most, the Dr. Tennant Parties identify "total sales"—but nothing else. That is insufficient.

Moreover, the Dr. Tennant Parties do not allege the scienter for traditional fraud—there are no allegations the Senergy Parties knew any representation (which the Dr. Tennant Parties do not identify) was false or made recklessly.

"Further, any failure to perform or satisfy representations made under the [Royalty Agreements] would already be a breach of contract and barred by the

economic loss rule." *Granting Hands LLC v. Rad Exotics LLC*, No. 3:23-CV-02408-L, 2024 WL 3995404, at *9 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-02408-L, 2024 WL 3997495 (N.D. Tex. Aug. 29, 2024). Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Dixon*, 2014 WL 2991742, at *6 (citing *Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). As the Texas Supreme Court has explained, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). The Dr. Tennant Parties' fraud-based damages are directly related to the alleged underpayment of royalties and arise from the contractual relationship via the Royalty Agreements. Thus, the economic loss rule bars the fraud claim. *Granting Hands LLC*, 2024 WL 3995404, at *9.

### 2.6. Count XII: Constructive trust is a remedy, not a cause of action.

Under Texas law, "[a] constructive trust is an equitable remedy used to prevent unjust enrichment." *Baxter v. PNC Bank Nat'l Ass'n*, 541 Fed. App'x 395, 396 (5th Cir. 2013) (per curiam) (citing *Everett v. TK–Taito*, LLC, 178 S.W.3d 844, 859 (Tex. App.—Fort Worth 2005, no pet.)). "A constructive trust is not a cause of action under Texas law." *In re Moore*, 608 F.3d at 263; *see also Roach v. Berland*, No. 3:13–CV–4640–D, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014) (dismissing the constructive trust cause of action as a claim). Like in *Roach*, the Dr. Tennant Parties allege constructive trust and disgorgement as a distinct cause of action. Dkt. #22 ¶¶

130–32. But they cannot refashion a remedy as a cognizable cause of action. Thus, the Court should dismiss this claim.

## CONCLUSION

For the reasons discussed above, Plaintiffs the Senergy Parties ask the Court to dismiss Dr. Tennant's Counts I, III, and IV under Rule 12(b)(1) and Dr. Tennant and TDA's Counts II, III, IV, VIII, IX, and XII under Rule 12(b)(6).

October 8, 2024

Respectfully submitted,

**Griffith Barbee PLLC**

/s/ *Casey Griffith*

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Kirk Voss
Texas Bar No. 24075229
Kirk.Voss@griffithbarbee.com

Joshua Yun
Texas Bar No. 24120335
Joshua.Yun@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 910
Dallas, Texas 75201
(214) 446-6020  |  main
(214) 446-6021  |  fax

**Counsel for Plaintiffs**

# CERTIFICATE OF WORD COUNT

The undersigned certifies this document contains 4,758 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Dated: October 8, 2024.

/s/ *Casey Griffith*
Casey Griffith

# CERTIFICATE OF CONFERENCE

The undersigned certifies the Senergy Parties complied with the Court's Standing Order regarding Rule 12(b)(6) motions to dismiss by informing Defendants of the basis of the anticipated motion by email on September 19, 2024, and conferring with Defendants' counsel on September 25. Defendants did not amend their counterclaims.

Dated: October 8, 2024.

/s/ *Casey Griffith*
Casey Griffith

# CERTIFICATE OF SERVICE

The undersigned certifies this document was filed electronically in compliance with LR 4.1. As such, it was served on all counsel of record on October 8, 2024.

Dated: October 8, 2024.

/s/ *Casey Griffith*
Casey Griffith