**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MARTEN GROUP, INC. d/b/a SENERGY MEDICAL GROUP and SCOTT TENNANT, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-01852 |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| JERALD TENNANT, MD, JOHN TENNANT, TERESA JESSEN TENNANT, JARED TENNANT, TENNANT DEVICES AND ACCESSORIES, LLC, and CURADOR, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS JERALD TENNANT, MD AND TENNANT DEVICES AND ACCESSORIES, LLC'S COUNTERCLAIMS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

I.    INTRODUCTION ..........................................................................1

II.   BACKGROUND ............................................................................1

III.  STATEMENT OF ISSUES .............................................................3

IV.   LEGAL STANDARD .....................................................................3

IV.   ARGUMENT.................................................................................4

    A.   Senergy Concedes that Defendant TDA Has Standing Such that
         Counts I, III, and IV Cannot Be Dismissed Under Rule 12(b)(1). .......4

    B.   Dr. Tennant Plausibly Pled Statutory Standing for Count II. ..............5

    C.   Count II Cannot Be Dismissed Because Senergy Admits the
         False and Misleading Use. ..................................................8

    D.   Dr. Tennant Alleged Plausible Facts Supporting Dilution in
         Counts III & IV. ..............................................................12

    E.   The Count VII Quantum Meruit Claim Should Not Be Dismissed ....15

    F.   Dr. Tennant Pled Fraud (Count IX) with Particularity. ...................18

    G.   Dr. Tennant's Constructive Trust Claim in Count XII Should
         Not Be Dismissed ..............................................................21

V.    CONCLUSION...............................................................................22

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
DEFENDANTS JERALD TENNANT, MD AND TENNANT DEVICES AND
ACCESSORIES, LLC'S COUNTERCLAIMS**

**PAGE ii**

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*,
    175 Fed. Appx. 672 (5th Cir. 2006)....................................................15

*Amazing Spaces, Inc. v. Metro Mini Storage*,
    608 F.3d 225 (5th Cir. 2010) .................................................................4

*Arquati v. Corradi USA, Inc.*
    No. 3:10-CV-0152-N, 2010 WL 11530860 (N.D. Tex. Dec. 29,
    2010) .................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................3

*Bd .of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v.*
    *KST Elec., Ltd.*,
    550 F. Supp. 2d 657 (W.D. Tex. 2008) ...............................................14

*Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*,
    2014 WL 642731 (N.D. Tex. Feb. 19, 2014) (Fitzwater, C.J.) ..............5

*Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Industries, Inc.*,
    814 F. Supp. 2d 698 (N.D. Tex. 2011) ...............................................20

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    593 U.S. 23, 123 S. Ct. 2041 (2003)...................................................10

*Fire Prot. Serv., Inc. v. Survitec Survival Prod., Inc.*,
    No. CV-H-19-2162, 2024 WL 2946098 (S.D. Tex. June 11, 2024)
    *appeal filed* No. 24-20405 (Sept. 11, 2024) ........................................8

*Haas Outdoors, Inc. v. Dryshod Int'l, LLC*,
    No. 1:18-CV-596-RP, 2019 WL 3130231 (W.D. Tex. July 15,
    2019) .................................................................................................14

*Hill v. Shamoun & Normal LLP,*
  544 S.W.3d 724 (Tx. 2018) ............................................................15, 16

*KCM Financial LLC v. Bradshaw,*
  457 S.W.3d 70 (Tx. 2015) ......................................................................21

*Lane v. Halliburton,*
  529 F.3d 548 (5th Cir. 2008) ...................................................................3

*Lexmark Intern., Inc. v. Static Control Components, Inc.,*
  572 U.S. 118, 134 S. Ct. 1377 (2014)..........................................5, 6, 7, 8

*Lormand v. US Unwired, Inc.,*
  565 F.3d 228 (5th Cir. 2009) ...................................................................3

*Lovelace v. Software Spectrum Inc.,*
  78 F.3d 1015 (5th Cir. 1996) .................................................................20

*McArdle v. Mattel, Inc.,*
  456 F. Supp. 2d 769 (E.D. Tex. 2006)...................................................11

*Molzan v. Bellagreen Holdings, LLC,*
  112 F.4th 323 (5th Cir. 2024) ................................................................11

*Mott's LLP v. Comercializadora Eloro, S.A.,*
  507 F. Supp. 3d 780 (W.D. Tex. 2020) .................................................15

*Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.,*
  417 S.W.3d 46 (Tex. App. 2013).....................................................20, 21

*Pizza Hut, Inc. v. Papa John's Intern., Inc.,*
  227 F.3d 489 (5th Cir. 2000) ...........................................................11, 12

*Plotkin v. IP Axess, Inc.,*
  407 F.3d 690 (5th Cir. 2005) .................................................................18

*Scott Fetzer Co. v. House of Vacuums Inc.,*
  381 F.3d 477 (5th Cir. 2004) ...................................................................9

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*,
    No. 3:17-CV-0054-B, 2018 WL 1806500 (N.D. Tex. April 17,
    2018) .......................................................................................................14

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763, 112 S. Ct. 2753 (1992)............................................................8, 11

*U.S. ex re. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................................................18

*Van Praagh v. Gratton*,
    993 F. Supp. 2d 293 (E.D.N.Y. 2014) ..............................................................14

*Varsity Spirit LLC v. Varsity Tutors, LLC*,
    No. 3:21-CV-0432-D, 2021 WL 9893514 (N.D. Tex. Sept. 17,
    2021) .....................................................................................................5, 14

*WENO Exchange LLC v. Redwood HCA LLC*,
    No. 6:20-CV-00129-ADA-JCM, 2022 WL 17812834 (W.D. Tex.
    Aug. 24, 2022) ......................................................................................17

*Worth Beauty LLC v. Allstar Prod. Grp., LLC*,
    No. 4:17-CV-1682, 2017 WL 5300007 (S.D. Tex. Nov. 13, 2017)....................8

**Statutes**

15 U.S.C. § 1114(1) ...............................................................................................4

15 U.S.C. § 1125(a) ..........................................................................................8, 11

15 U.S.C. § 1125(c) ...............................................................................................4

15 U.S.C. § 1125(c)(1)......................................................................................4, 12

15 U.S.C. § 1125(c)(2)(A) ..............................................................................12, 13

15 U.S.C. § 1127 ....................................................................................................8

Tex. Bus. & Com. Code Ann. § 16.103(b) ...........................................................15

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
DEFENDANTS JERALD TENNANT, MD AND TENNANT DEVICES AND
ACCESSORIES, LLC'S COUNTERCLAIMS

PAGE v

**Other Authorities**

Fed. R. Civ. P. 8(a)...................................................................................18

Fed. R. Civ. P. 9(b) ..................................................................................18

Fed. R. Civ. P. 12 .....................................................................................22

Fed. R. Civ. P. 12(b)(1)..............................................................................4

Fed. R. Civ. P. 12(b)(6)..................................................................3, 15, 16

# I.    INTRODUCTION

Dr. Jerald Tennant and Tennant Devices and Accessories, LLC (collectively "Dr. Tennant") filed counterclaims against Marten Group, Inc. d/b/a Senergy Medical Group and Scott Tennant (collectively "Senergy") based on Senergy's infringement of Dr. Tennant's valuable trademarks, breach of royalty agreements associated with those marks, fraudulent underreporting of sales to advance a significant underpayment of royalties, and wrongful profit from Senergy's continued use of the marks. Senergy seeks to dismiss several of these counterclaims under Federal Rule of Civil Procedure 12(b)(1) and (6), asserting that Dr. Tennant has not established standing or stated a claim for relief. But, the 32 pages setting forth Dr. Tennant's counterclaims provide detailed factual allegations making each of his counterclaims plausible and demonstrating standing to pursue them. The Court should, therefore, deny Senergy's motion.

# II.    BACKGROUND

Beginning in 2003, Dr. Tennant introduced to the U.S. market micro-current therapy medical devices enhanced by his own research and marked with his branding. Dkt. 22 ¶¶ 13-14, 31-32. The devices were a success. Dkt. 22 ¶ 27. Starting in 2005, Dr. Tennant registered trademarks associated with these devices

with the United States Patent and Trademark Office—Tennant BioModulator®, Tennant BioTransducer®, and Healing is Voltage®. Dr. Tennant later assigned the marks to Tennant Devices and Accessories, LLC (TDA), which he controls. Dkt. 22 ¶¶ 15-27.

For over two decades, Scott Tennant through Senergy successfully sold Dr. Tennant's marked devices with Dr. Tennant's permission pursuant to royalty agreements with Scott and Senergy. Dkt. 22 ¶¶ 32, 41. Under the agreements, Senergy paid a royalty for the use of Dr. Tennant's marks and likeness. Dkt. 22 ¶ 41. But, in 2024, Dr. Tennant discovered that Senergy had been grossly underreporting sales and underpaying royalties owed. Dkt. 22 ¶¶ 46-52. Dr. Tennant canceled Scott's license on June 21, and informed Scott and Senergy that they could no longer use the Tennant marks. Dkt. 22 ¶ 53. Notwithstanding the cancelation, Senergy admits it continues to sell Dr. Tennant's branded devices and distribute marketing materials falsely associating Dr. Tennant with Senergy's business. Dkt. 1 ¶ 53.

Dr. Tennant incorporates by reference his counterclaims (Dkt. 22), which set forth a plausible basis for each of his claims that Senergy now seeks to dismiss.

## III.   STATEMENT OF ISSUES

Whether the Court should deny Senergy's motion because Dr. Tennant's detailed allegations plead plausible claims for relief and should not be dismissed.

## IV.   LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) are disfavored and "rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). When reviewing such a motion, the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences" in favor of the plaintiff. *Id.* To overcome such a motion, the plaintiff need only plead a plausible claim for relief by providing the grounds for relief and factual allegations "that when assumed to be true raise a right to relief above the speculative level." *Lormand*, 565 F.3d at 232; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As a result, a claim should not be dismissed under Rule 12(b)(6) "unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Dr. Tennant's detailed factual allegations support each of the alleged causes of action. The Court, therefore, should deny Senergy's improvident motion.

## IV.  ARGUMENT

### A.    Senergy Concedes that Defendant TDA Has Standing Such that Counts I, III, and IV Cannot Be Dismissed Under Rule 12(b)(1).

To have standing under the Lanham Act § 1114(1) (Count I) for an infringement claim, the moving party must demonstrate it is the "registrant" of the mark at issue. *See* 15 U.S.C. § 1114(1). To have standing for a dilution claim under the Lanham Act § 1125(c) (Count III), the moving party must be "the owner" of the famous mark. *See* 15 U.S.C. § 1125(c)(1). A Texas common law infringement and unfair competition claim (Count IV) presents the same issues as federal law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010).

Senergy defines Defendants Dr. Tennant and Tennant Devices and Accessories, LLC ("TDA") as the "Dr. Tennant Parties" (Mot. at 1) and admits that TDA owns the Tennant Marks (Mot. at 8). It then urges that the "Dr. Tennant Parties must plausibly plead they own the trademarks in question." Mot. at 8. They have so pled these facts, as counter-defendants recognize in their motion. *Compare*

Dkt. 22, Counterclaim[1] at ¶¶ 15-27 *with* Mot. at 8 (citing Ex. 1 at App. 1-3 (assignment to TDA for Tennant BioModulator®) and Ex. 2 at App. 4-9 (assignment of title for Tennant BioTransducer® and Healing Is Voltage®)).

Even if there were any question as to which entity is the current registrant, Senergy's own authority confirms the Court can take judicial notice of USPTO registrations. *See Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-CV-0432-D, 2021 WL 9893514, at *5 (N.D. Tex. Sept. 17, 2021); *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC,* 2014 WL 642731, at *3 n.4 (N.D. Tex. Feb. 19, 2014) (Fitzwater, C.J.) (taking judicial notice of trademark registrations). TDA is the registrant and current owner of the Tennant Marks and has standing to pursue Counts I, III, and IV.  These claims cannot be dismissed.

## B.    Dr. Tennant Plausibly Pled Statutory Standing for Count II.

To demonstrate statutory standing, a plaintiff must show that they "fall within the zone of interests protected by the law invoked." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 134 S. Ct. 1377 (2014). The test requires consideration of the interests protected by the statute and whether plaintiffs' injuries were proximately caused by a violation. *Id.* at 131-32. This test

---

[1]  All future references to Dkt. 22 are to the paragraphs alleging the counterclaims at issue in this motion, and not the answer.

"is not 'especially demanding.'" *Id.* at 130 (quoting *Match-E-Be-Nash-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224, 132 S. Ct. 2199 (2012) (arising in the APA context)). "[T]he test 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed" the statute authorizes the suit. *Id.* at 130.

Senergy's challenge turns on whether Dr. Tennant sufficiently pled commercial injury flowing from its misconduct—*i.e.*, the proximate cause portion of the test. Dkt. 43 at 9-10. The counterclaims assert that Dr. Tennant has developed name recognition and goodwill in the market for the medical devices containing his marks, particularly because the Tennant branded devices have been met with popular approval. Dkt. 22 ¶¶ 26-27. Dr. Tennant also alleged that he canceled Senergy's permission to use his marks, yet Senergy continues to do so in the sale and marketing of the Tennant marked medical devices. *Id.* ¶¶ 56-61. As a result, consumers have been or will be deceived by Senergy's continued assertion of affiliation or sponsorship of the devices and services using Dr. Tennant's identical marks. The intentional infringement of Dr. Tennant's marks will injure his goodwill, reputation, and inevitably divert sales from him. *Id.* ¶¶ 61-66. There

can be no real dispute that these allegations plausibly demonstrate injury resulting from Senergy's violation of the unfair competition statute. Senergy is using Dr. Tennant's marks because they are valuable and will mislead the public into buying devices from Senergy. Indeed, the U.S. Supreme Court in *Lexmark* made clear that "diversion of sales to a direct competitor," and other alleged injuries with "sufficiently close connection to the conduct the statute prohibits" meet the standard. *Lexmark*, 572 U.S. at 133 & 138. That is exactly what Dr. Tennant alleges here.

Lacking any supportable argument for dismissal at the pleading stage, Senergy relies on a case, now on appeal,[2] addressing statutory standing at the summary judgment stage. Dkt. 43 at 9 (citing *Fire Prot. Serv., Inc. v. Survitec Survival Prod., Inc.*, No. CV-H-19-2162, 2024 WL 2946098 (S.D. Tex. June 11, 2024) *appeal filed* No. 24-20405 (Sept. 11, 2024)). The standard of review for summary judgment is far more exacting, requiring that there be "no genuine dispute of fact" and demonstration that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Thus, it is no surprise that the court dismissed plaintiffs' claim at that stage when plaintiff "offer[ed] **no evidence**" to show

---

[2] Senergy failed to note that this case is on appeal and may not provide any guidance if reversed.

injury. *Fire Prot. Serv.*, 2024 WL 2946098, *6 (emphasis added). Instead, the

plaintiff relied solely on conclusory statements of "likely damage" by employees

of the company. *Id.* This trial court opinion that turns on a failure to support a

claim with any evidence at the summary judgment stage is not a basis to ignore the

U.S. Supreme Court's reasoning in *Lexmark*, setting forth the framework for

assessing and confirming that Dr. Tennant's allegations cannot be dismissed.

**C.    Count II Cannot Be Dismissed Because Senergy Admits the False and Misleading Use.**

The Lanham Act makes "'actionable the deceptive and misleading use of

marks' 'to protect persons engaged in . . . commerce against unfair competition.'"

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68, 112 S. Ct. 2743

(1992) (quoting 15 U.S.C. § 1127 in a discussion about the broad coverage of the

unfair competition provision). The Act provides a claim for the use of a trademark

"that 'is likely to cause confusion as to the affiliation, connection, or association'

of two persons or product[s]." *Worth Beauty LLC v. Allstar Prod. Grp., LLC*, No.

4:17-CV-1682, 2017 WL 5300007, *6 (S.D. Tex. Nov. 13, 2017) (citing 15 U.S.C.

§ 1125(a)). As with an infringement claim, the Court must consider the "digits of

confusion" in assessing such a claim, such as the type of trademark, the similarity

of the marks, the similarity of the products, the identity of the retailers, purchasers,

media, the defendant's intent, and evidence of actual confusion. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484-85 (5th Cir. 2004). Context is critical to this analysis. *Id.* at 485. "Prominent and pervasive use of a mark will suggest affiliation, but mere reference to a marked product will not." *Id.*

There is no real dispute that Dr. Tennant pled such unfair competition based on Senergy's use of Dr. Tennant's name and/or marks and express misrepresentation of its affiliation, which Senergy has persisted in doing in the months since the license agreements were canceled:

- Dr. Tennant named the medical devices—the Tennant BioModulator® and Tennant BioTransducer®—after himself because, as everyone recognized, he had conceived of the products and corresponding brand. Dkt. 22 ¶¶ 30-32.

- Dr. Tennant's name and marks have developed name recognition and goodwill among consumers after "thousands of success stories and testimonials of patients' recovery and pain reduction." *Id.* ¶¶ 15-16, 26.

- Dr. Tennant's popular products are understood to be affiliated with Dr. Tennant and his company, TDA, as demonstrated by the branding and the advertising that relies on his name. *Id.* ¶ 27.

- After Dr. Tennant terminated the licensing agreements, Senergy has continued to advertise and use the marks and Dr. Tennant's name and likeness without permission. *Id.* ¶¶ 53-61. Indeed, Senergy admits the continued unauthorized use of the marks. Dkt. 1 ¶ 53.

- Senergy continues to market, sell, and distribute the devices based on the false and misleading affiliation between Dr. Tennant and his established brand and Senergy, including by misrepresenting its permission to continue to sell the Tennant devices, associating Dr. Tennant's name with the products it markets and sells, and relying on Dr. Tennant's goodwill to market the devices and Senergy's services. Dkt. 22 ¶¶ 57-65. These actions will confuse consumers about the source and affiliation of the products. *Id.* ¶¶ 63-65.

Senergy ignores all of these allegations and instead asserts that Dr. Tennant has not stated a claim for passing off because Dr. Tennant does not manufacture the devices. Dk. 43 at 10-11. The case law Senergy relies on addresses claims arising from the false designation of the origin of the goods—*i.e.*, where the products are physically produced. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 593 U.S. 23, 26-27, 123 S. Ct. 2041 (2003) (addressing the physical

production and distribution of video); *McArdle v. Mattel, Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006) ("for the *instant case*, 'origin of goods' means the physical producer . . ." (emphasis added)). Those cases are inapposite. Dr. Tennant's claim rests on Senergy's wrongful and misleading use of his name and marks to suggest affiliation, to influence customer decisions, and benefit from this unfair conduct. This satisfies the standard for stating a claim for unfair competition under the Lanham Act. *See Two Pesos, Inc.*, 505 U.S. at 767-68; *see also Molzan v. Bellagreen Holdings, LLC*, 112 F.4th 323, 333-34 (5th Cir. 2024) (taking into consideration misleading statements on websites associating the brands).

Senergy separately asserts that Dr. Tennant's allegations rest on statements made by Senergy that "merely constitute customer support," not false or misleading statements. Dkt. 43 at 12 (citing *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489 (5th Cir. 2000)). First, the *Pizza Hut* case provides no support for Senergy's position, as the court's analysis turned on standards applicable to motions for judgment as a matter of law, not the pleading standards. 227 F.3d at 494. Even so, the case explains that a false or misleading statement of fact, rather than opinion, must be the basis of the claim. *Id.* at 495-96. This is precisely what Dr. Tennant alleged: Senergy falsely continues to claim an affiliation with Dr.

Tennant and permission to sell devices with Dr. Tennant's marks. Dkt. 22 ¶¶ 58-61. These are false and misleading statements of fact that support a plausible claim of unfair competition.

## D. Dr. Tennant Alleged Plausible Facts Supporting Dilution in Counts III & IV.

An "owner of a famous mark" may prevent "use of a mark . . . in commerce that is likely to cause dilution . . . ." 15 U.S.C. § 1125(c)(1). The Act defines a famous mark as one that is "widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). The Act provides specific factors for consideration:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
(iii) The extent of actual recognition of the mark.
(iv) Whether the mark was registered . . . on the principal register.

*Id.*

Dr. Tennant alleged all the necessary facts related to the fame of his marks: he registered the first mark nearly 20 years ago and has diligently registered additional marks to protect his brand (Dkt. 22 ¶¶ 17-18); the marks promote Dr.

Tennant's products "throughout the United States and the world" (*id.* ¶¶ 31, 81); the Tennant BioModulator® and Tennant BioTransducer® have resulted in thousands of success stories (*id.* ¶ 15); the sales have netted millions, and the marks are worth millions (*cf. id.* ¶¶ 16, 52); Dr. Tennant and his marks have developed name recognition among medical practitioners and consumers (*id.* ¶ 26); the public is familiar with his marks throughout the United States (*id.* ¶¶ 27 & 81); the marked devices have received federal recognition as reflected by their FDA approval (*id.* ¶ 14); and his marks accompany books, written articles, and lectures and seminars (*id.* ¶ 18). These facts plausibly demonstrate fame under the statutory factors. 15 U.S.C. § 1125(c)(2)(A).

Senergy relies exclusively on district court cases to assert that the fame element is not met unless the mark is as recognizable as "Budweiser beer, Camel cigarettes, Barbie dolls, and the like." Dkt. 43 at 13-14 (quoting *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, *4 (N.D. Tex. April 17, 2018) and citing other district court cases). First, to support this proposition, the leading case Senergy cites relies on case law and legislative history that pre-dates the most recent amendment to the anti-dilution statute in 2006. *E.g., Bd .of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at*

*Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 675 (W.D. Tex. 2008) (citing

legislative history from 1988 and 1995, when the statute was previously amended,

and pre-2006 cases); *see also Varsity Spirit LLC v. Varsity Tutors, LLC*, (2021 WL

9893414, *18 (N.D. Tex. Sept. 17, 2021) (relying on *Univ. of Tex. at Austin* for

this analysis). Second, the case law provides no principled reason for applying

such an exacting standard at the pleading stage, where the allegations track and

plausibly plead the statutory standards for assessing fame. *See Springboards*, 2018

WL 1806500, *4-5; *see also Univ. of Tex. at Austin*, 550 F. Supp. 2d at 662-63

(assessing fame at the summary judgment stage).

    A brief survey of federal cases reviewing dilution claims at the pleading

stage reveals that marks far less famous regularly survive a motion to dismiss so

long as the relevant factors are pled. *E.g.*, *Van Praagh v. Gratton*, 993 F. Supp. 2d

293, 305 (E.D.N.Y. 2014) (name of spiritual medium "Van Praagh" satisfied fame

requirement at pleading stage where complaint alleged he appeared at conferences

and published books); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, No. 1:18-CV-

596-RP, 2019 WL 3130231, at *5 (W.D. Tex. July 15, 2019) (MOSSY OAK and

BREAK-UP camouflage patterns sufficiently famous and rejecting conclusory

"household name" argument at pleading stage). In *Alpha Kappa Alpha Sorority*

*Inc. v. Converse Inc.*, 175 Fed. Appx. 672, 681 (5th Cir. 2006), the Fifth Circuit reversed a Rule 12(b)(6) dismissal because the plaintiff had alleged the marks were famous and distinct, the lengthy use of the marks, substantial revenues for marked products, and that the marks are associated exclusively with plaintiffs' services and products. *Id.* at 678 & 681-82. Under this case law (*i.e.*, authority tied to the statutory and pleading standard), Dr. Tennant's allegations plausibly allege fame, such that Count III cannot be dismissed.

For the same reasons, the pleadings also plausibly allege a dilution claim under Texas state law, where the geographic scope is smaller. Tex. Bus. & Com. Code Ann. § 16.103(b); *see also Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 789 (W.D. Tex. 2020) (distinguishing the showing of fame required at the pleading phase from the evidence required at summary judgment and collecting cases recognizing same).

## E.    The Count VII Quantum Meruit Claim Should Not Be Dismissed.

Quantum meruit arises independently of any express contract. *Hill v. Shamoun & Normal LLP*, 544 S.W.3d 724, 733 (Tx. 2018). Quantum meruit "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Id.* at 732.

Where, as here, Senergy has wildly asserted that no enforceable contract exists with Dr. Tennant (Dkt. 1 ¶ 45), the claim for quantum meruit cannot be dismissed under Rule 12(b)(6). *See generally Hill*, 544 S.W.3d at 733 (a plaintiff generally cannot recover under quantum meruit if there is a valid contract). Moreover, since the termination of the contractual relationship this past summer (Dkt. 22 ¶ 53), Senergy continues to trade on and benefit from Dr. Tennant's marks and likeness without permission (*see* Dkt. 22 ¶¶ 57-61). The counterclaims develop the services—developing the devices and branding, and granting the right to use them (*e.g.*, Dkt. 22 ¶¶ 14, 16, 27) —that Senergy expected to pay for and still (unlawfully) enjoys the benefit of. Indeed, the trademarks make clear that they apply to services from which Senergy is benefitting; the Healing is Voltage® marks relate specifically to written materials that Dr. Tennant develops and seminars he gives to promote the use of the Tennant marked devices. Dkt. 22 ¶ 18. It would be unjust for Senergy to receive these benefits without paying Dr. Tennant. Not to mention that Dr. Tennant has consistently provided services to Senergy in connection with its sales, including training consumers on the protocols for use that he developed and allowing Senergy to trade on his name. Dkt. 22 ¶¶ 89-90.

Senergy's inapplicable case citations do nothing to diminish Dr. Tennant's plausible allegations with respect to quantum meruit. For example, the *LTS Group, Inc. v. Woodcrest Capital, L.L.C.*, case only stands for the proposition that if a plaintiff does not support its allegations with actual evidence of the value of the services performed, the claim cannot be sustained. 222 S.W.3d 918, 921 (Tx. Ct. App. 2007). Also, providing financial materials to a potential future buyer was not with an expectation of compensation, but instead to gain a "future advantage or business opportunity." *Id.* This is significantly different from Dr. Tennant's actual services performed—granting rights to use a brand and actively participating in the promotion of that brand—with the understanding that Senergy would benefit from and pay for those services. Similarly, *Arquati v. Corradi USA, Inc.* No. 3:10-CV-0152-N, 2010 WL 11530860, *4 (N.D. Tex. Dec. 29, 2010) fails to support dismissal, as it merely recites that Texas does not recognize a conversion claim for intellectual property because those rights are intangible property.

Dr. Tennant plausibly pleads a quantum meruit claim where he granted Senergy the rights to use his marks and provided related services to promote the Tennant marked products. *See WENO Exchange LLC v. Redwood HCA LLC*, No. 6:20-CV-00129-ADA-JCM, 2022 WL 17812834, *4 (W.D. Tex. Aug. 24, 2022)

(denying a motion to dismiss a quantum meruit claim where plaintiff granted defendant right to use plaintiff's trademark).

## F.    Dr. Tennant Pled Fraud (Count IX) with Particularity.

For purposes of Rule 9(b), the Fifth Circuit requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). This specificity requirement "does not supplant Rule 8(a)'s notice pleading" and requires only "simple, concise and direct allegations" to demonstrate a plausible claim of fraudulent circumstances. *U.S. ex re. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

Senergy cherry picks just 2 clauses of 2 sentences in the 32 pages of counterclaims to argue that Dr. Tennant has not stated the fraud claim with particularity. Dkt. 43 at 16. This intentional misreading is not persuasive. The allegations provide:

- Dr. Tennant agreed that Senergy would sell the marked devices that Dr. Tennant had conceived and branded. Dkt. 22 ¶¶ 32, 36-37.

- Dr. Tennant did so with the specific understanding that Senergy would pay

royalties in connection with the sale of the marked devices and keep accurate records of the sales of the marked devices. *Id.* ¶¶ 33-34, 38.

- For years, Dr. Tennant believed the parties operated according to this agreement, with Senergy paying Dr. Tennant royalties. *Id.* ¶ 41.

- But, in recent years, Senergy withheld the previously provided detailed monthly statement of sales. *Id.* ¶¶ 45. Senergy continued to do so even after Dr. Tennant asked for more specific reports. *Id.* Senergy was the only party who possessed information necessary to calculate sales and resulting royalties. *Id.* ¶ 120.

- An audit revealed that in recent years Senergy had consistently underreported the number of device sales and underpaid royalties on those false numbers. *Id.* ¶¶ 46-48. In addition, Senergy did not adjust royalties according to the device MSRP as agreed. *Id.* ¶ 49.

- Despite Dr. Tennant raising the issue with Senergy, it refused to cure the errors or provide the requisite information for Dr. Tennant to fully calculate the underpayment. *Id.* ¶ 50-51.

- By staying silent and refusing to cure—either with sufficient information for calculating royalties or actual payment—Senergy fraudulently concealed

information to force Dr. Tennant to accept substantially less than owed. *Id.* ¶ 121.

- The losses due to Senergy's intentional underpayment of royalties are significant. *Id.* ¶ 52.

These allegations include the "who, what, when, where, and why" of the claim. *Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Industries, Inc.*, 814 F. Supp. 2d 698, 707 (N.D. Tex. 2011); *contra* Dkt. 43 at 16 (arguing that the allegations merely allege "misrepresented and concealed facts of total sales"). The allegations also "are sufficient to support [] an inference" of knowledge because they "identify circumstances that indicate conscious behavior on the part of the defendant"—*i.e.*, Senergy had an opportunity to cure if it was a mere mistake but refused. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018–19 (5th Cir. 1996).

Senergy's argument that the economic loss rule bars the fraud claim is no more persuasive. Dkt. 43 at 16-17. First, Texas has made clear that the economic loss rule does not bar recovery for fraud or fraudulent inducement claims. *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 62 (Tex. App. 2013). This is because the "duty not to commit fraud is different from and independent of the duty to comply with the terms of a contract." *Id.* at 63. Here, the fraud and

fraudulent inducement claims arise from just such duties independent of the

contract—not to create fraudulent reporting to induce Dr. Tennant to accept royalty

payments without question. Moreover, Senergy has denied the existence of any

enforceable contractual obligations. Dkt. 1 at ¶ 45. Thus, at the pleading stage, it

would be inappropriate to dismiss Dr. Tennant's fraud or fraudulent inducement

claim.

## G.    Dr. Tennant's Constructive Trust Claim in Count XII Should Not Be Dismissed

Senergy's only basis to dismiss the constructive trust claim is that it has been

characterized as a remedy rather than a cause of action. Dkt. 43 at 17-18. But, a

constructive trust claim must be supported by "(1) breach of a special trust or

fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the

wrongdoer, and (3) an identifiable res that can be traced back to the original

property." *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tx. 2015). In

other words, to establish a constructive trust, a plaintiff must establish these

elements of the claim. As discussed *supra* Sections IV.E. & IV.F., Dr. Tennant's

allegations support a plausible claim for fraud and unjust enrichment. Any

constructive trust will hold the amounts owed to compensate Dr. Tennant for

Senergy's use of his marks, name and likeness. These allegations are sufficient to

state a plausible claim for a constructive trust.

## V.    CONCLUSION

For the foregoing reasons, the amended counterclaim satisfies the pleading requirements under Rule 12 and should not be dismissed. The Court should deny Senergy's motion.

Dated:  October 29, 2024                Respectfully submitted,

*/s/Tyler L. Farmer*
Tyler L. Farmer
WSBA No. 39912
*Pro Hac Vice*
Tyler.farmer@bclplaw.com
Ariel A. Martinez
WSBA No. 54869
*Pro Hac Vice*
Ariel.martinez@bclplaw.com
Chelsey L. Mam
WSBA No. 44609
*Pro Hac Vice*
Chelsey.mam@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
999 3rd Ave., Suite 4400
Seattle, WA 98104
Tel: (206) 623-1700
Fax: (206) 623-8717

Justin D. Hanna
Texas Bar No. 24095726
Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200W
Dallas, TX  75201-7965
(214) 721 8052
E: Justin.Hanna@bclplaw.com

***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned certifies that the parties have complied with the meet and confer requirements of Local Rule CV-7(h) and that the foregoing motion and relief sought therein is unopposed.

By: */s/Tyler L. Farmer*
Tyler L. Farmer

## CERTIFICATE OF WORD COUNT

Pursuant to Section II.A. of the Court's Procedures for Cases Assigned to District Judge Ada Brown and Standing Order, the undersigned hereby certifies that, per the word-processor register, the foregoing Response contains 4,501 words, excluding the case caption, signature block, and certificates.

By: */s/Tyler L. Farmer*
Tyler L. Farmer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through CM/ECF on October 29, 2024.

By: */s/Tyler L. Farmer*
Tyler L. Farmer