# United States District Court
# Northern District of Texas
# Dallas Division

| | |
|---|---|
| MARTEN GROUP, INC. D/B/A SENERGY MEDICAL GROUP AND SCOTT TENNANT, <br><br> *Plaintiffs* <br><br> v. <br><br> JERALD TENNANT, MD, JOHN TENNANT, TERESA JESSEN TENNANT, JARED TENNANT, TENNANT DEVICES AND ACCESSORIES, LLC, AND CURADOR, LLC, <br><br> *Defendants* | Civil Action No. 3:24-cv-01852 |

**Plaintiffs' Reply in Support of Their Motion to Dismiss**

Plaintiffs Marten Group, Inc. d/b/a Senergy Medical Group and Scott Tennant (the "Senergy Parties") file this Reply in support of their Rule 12(b)(1) and (6) Motion to Dismiss (Dkt. #43).

# ARGUMENT

1. **Counts I, III, and IV: Dr. Tennant does not dispute he lacks standing under Rule 12(b)(1) to bring his trademark-related claims.**

Dr. Tennant—as an individual—lacks standing to assert trademark infringement under 15 U.S.C. § 1114 (Count I); dilution under 15 U.S.C. § 1125(c) (Count III); and trademark infringement, unfair competition, and dilution under Texas common law (Count IV). *See* Dkt. #22 at 36–40. The Dr. Tennant Parties assert TDA has standing to assert these claims, but they fail to address *Dr. Tennant's* lack of standing. Dkt. #51 at 4–5. Thus, as argued in the Motion, Dr. Tennant's trademark claims (Counts I, III, and IV) should be dismissed for lack of standing.

2. **Count II: The Dr. Tennant Parties lack statutory standing under § 1125(a)(1) to bring their unfair competition claim.**

The Dr. Tennant Parties' claim for unfair competition under § 1125(a)(1) (Count II) should be dismissed under Rule 12(b)(6) for lack of statutory standing. As a threshold matter, the Dr. Tennant Parties claim they "sufficiently pled commercial injury flowing from [the Senergy Parties'] misconduct." Dkt. #51 at 6. In support, however, they cite a slew of conclusory allegations from their Counterclaims. *See id.* (citing Dkt. #22 ¶¶ 26–27; *id.* ¶¶ 56–61; *id.* ¶¶ 61–66). But both the Dr. Tennant Parties' Response and Counterclaims merely recite the elements of proximate harm: that Dr. Tennant allegedly "developed name recognition and goodwill in the market for the medical devices containing his marks," and that "consumers have been or will be deceived" by the Senergy Parties' alleged infringement of the Marks, which "will injure his goodwill, reputation, and inevitably divert sales from him." *Id.* The

Response then concludes "[t]here can be no real dispute that these allegations plausibly demonstrate injury." *Id.* at 6–7. But this conclusion, too, lacks sufficient particularity to survive dismissal.

Without providing any new authority, the Dr. Tennant Parties cite to *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), to assert "'diversion of sales to a direct competitor' and other alleged injuries with 'sufficiently close connection to the conduct the statute prohibits' meet the standard." *Id.* at 7 (quoting 572 U.S. at 133, 138). Not only does the Response fail to adequately plead these "other alleged injuries," but the citation also highlights an additional deficiency—the Dr. Tennant Parties' failure to allege that either Dr. Tennant or TDA was a direct competitor of the Senergy Parties. *See Fire Prot. Serv., Inc. v. Survitec Survival Prod., Inc.*, No. CV H-19-2162, 2024 WL 2946098, at *5 (S.D. Tex. June 11, 2024) (dismissing § 1125(a) claims for lack of standing because the claimant submitted "only conclusory statement on the question of injury" and did "not manufacture or directly sell the products at issue and cannot provide evidence of any injury").

The Dr. Tennant Parties only attack *Fire Protection* on procedural grounds. *See* Dkt. #51 at 7–8. But that *Fire Protection* is on appeal or that it was decided at the summary judgment stage does not affect its underlying rationale—that both the claims and supporting declarations did not adequately demonstrate injury or any direct sales. *See* 2024 WL 2946098, at *5. In *Fire Protection*, the claimant could not provide evidence of injury *because* it did not manufacture or directly sell the products at issue. *Id.*

Thus, even at the pleadings stage, the Dr. Tennant Parties fail to establish any plausibly pleaded commercial injury that flows from the Tennant Parties' alleged misconduct. Like in *Fire Protection*, neither Dr. Tennant nor TDA plead they manufacture or sell the products bearing the Marks. Instead, they acknowledge "*Scott* would be able to use Dr. Tennant's brand to sell Dr. Tennant's innovative products." Dkt. #22 ¶ 32; *see, e.g., id.* ¶¶ 33, 37, 41 (emphasis added). The Dr. Tennant Parties never assert they—or any other licensed third parties—sell and manufacture the at-issue devices. They only vaguely acknowledge the "products bearing the Tennant marks are offered and sold in commerce." *Id.* ¶ 25. At bottom, the Dr. Tennant Parties suffered no loss in sales because they do not sell the Tennant Devices. Thus, the Court should dismiss the unfair competition claim.

3.  **<u>Count II:</u> The Dr. Tennant Parties fail to plead they manufacture or sell the Devices—a required element of their passing off claim.**

The Dr. Tennant Parties do not (and cannot) plead they manufacture or sell the Devices—an element under § 1125(a)(1) passing-off actions. *See McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006); *see also* 15 U.S.C. § 1125(a)(1).

Ignoring this deficiency, the Dr. Tennant Parties seek to distinguish *McArdle* by asserting the case only "addresses claims arising from the false designation of the origin of the goods," which are supposedly "inapposite" because the claim "rests on Senergy's wrongful and misleading use of [Dr. Tennant's] name and marks to suggest affiliation, to influence customer decisions, and benefit from this unfair conduct." Dkt. #51 at 10–11. But this assertion contradicts the Dr. Tennant Parties' own Counterclaims. The unfair competition claim itself alleges the Senergy Parties' have

"engaged in passing off," "misrepresent[ed] that [the Dr. Tennant Parties'] products originated with [the Senergy Parties]," and made "false or misleading statements of fact or designations of origin." Dkt. #22 ¶¶ 73–74. Those pleadings track the language of a § 1125(a)(1) passing-off claim. The Dr. Tennant parties cannot refashion them to avoid dismissal.

4. **Count II: The Dr. Tennant Parties fail to establish the falsity or misleading nature of the Senergy Parties' alleged representations.**

The Dr. Tennant Parties also strain to support their unfair competition claim with any false or misleading statements of fact. The Response merely asserts "Senergy falsely continues to claim an affiliation with Dr. Tennant and permission to sell devices with Dr. Tennant's marks," without identifying what those statements are. *See* Dkt. #51 at 11–12. Further, the Dr. Tennant Parties still do not present any well-pleaded facts regarding the effect of the Senergy Parties' alleged material deception, as required by § 1125(a). *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). Without more, these conclusions fail to satisfy Rule 12(b)(6).

5. **Counts III and IV: The Dr. Tennant Parties fail to adequately allege fame for their dilution claims.**

The Dr. Tennant Parties' dilution claims cannot survive dismissal because the allegations establishing the Marks' fame remain threadbare. The Dr. Tennant Parties cannot establish fame with "legal conclusions that are devoid of the factual content necessary to plead a plausible claim." *See Hillstone Rest. Grp., Inc. v. Hillstone Mgmt.*, LLC, No. 3:16-CV-2624-D, 2017 WL 495869, at *2 (N.D. Tex. Feb. 7, 2017). But instead of adding particularity, the Dr. Tennant Parties rely on distinguishable

caselaw. *See* Dkt. #51 at 14–15 (citing *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 305 (E.D.N.Y. 2014); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, No. 1:18-CV-596-RP, 2019 WL 3130231, at *5 (W.D. Tex. July 15, 2019); *Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 Fed. App'x 672, 681 (5th Cir. 2006)).

In *Van Praagh*, the plaintiff adequately pleaded fame by alleging his worldwide recognition, which in relevant part was due to his "appearing on widely syndicated television shows and at large conferences throughout the United States." 993 F. Supp. 2d at 305. Here, the Dr. Tennant Parties' Counterclaims stop short of alleging the same level of fame. While the Response claims the Marks "promote Dr. Tennant's products 'throughout the United States and the World,'" the Counterclaims merely express that it was "his conception and vision" to do so. Dkt. #22 ¶ 31. Otherwise, the Dr. Tennant Parties conclusorily claim "the public is familiar with the Tennant Marks." *Id.* ¶ 27.

The Dr. Tennant Parties also fail to couch their allegations in something other than a niche market. Indeed, this Court expressly distinguished *Haas Outdoors* on this ground. *See Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-CV-0432-D, 2021 WL 9893514, at *20 (N.D. Tex. Sept. 17, 2021). Whereas *Haas Outdoors* adequately pleaded a mark's broad national fame, the *Varsity Spirit* plaintiff failed to allege national exposure and recognition outside of the cheerleading community. *Id.* Despite alleging its "household name" and national appeal, this Court held these allegations were couched in the marks' fame among its consumers, "not necessarily the general public." *Id.* Likewise, the allegations here are limited to "name recognition among medical practitioners and consumers." Dkt. #22 ¶ 26. And allegations of

sales volume and a sizable customer base fail to give rise to an inference that the Marks would be recognized beyond a niche market. *See Nat'l Debt Relief, LLC v. Season 4, LLC*, No. 1:23-CV-07198 (LAK)(KHP), 2024 WL 2941397, at *4 (S.D.N.Y. May 20, 2024) (distinguishing *Van Praagh* to hold that claims of "tens of thousands of customers" do not establish fame beyond a niche market).

*Alpha Kappa Alpha* is also inapposite. The issue on appeal there was whether the district court correctly held the complaint "fail[ed] to identify any trademarks or trade dress that any of the Plaintiffs own or have used that have also been used by [Defendant]," not whether the marks' fame was adequately alleged. *Alpha Kappa Alpha*, 175 Fed. App'x at 681.

Thus, because the Dr. Tennant Parties fail to plead facts supporting the Marks' fame, the Court should dismiss both dilution claims under Rule 12(b)(6).

6. **Count IX: The Dr. Tennant Parties fail to plead fraud with particularity and to allege scienter.**

The Dr. Tennant Parties claim their failure to allege fraud with particularity is a result of "intentional misreading." Dkt. #51 at 18. They recite the same allegations supporting their fraud claim to insist upon their specificity. *Id.* at 18–20. These assertions, however, only highlight their deficiencies.

The Dr. Tennant Parties vaguely describe the alleged fraud as occurring "in recent years." Dkt. #22 ¶ 45. They assert the Senergy Parties failed to provide "detailed statements of monthly sales" without explaining what details were absent. *Id.* They do not specifically identify when Dr. Tennant made his "repeated requests for them." *Id.* The Dr. Tennant Parties do not describe when they notified the Senergy

Parties of the alleged errors in royalty payment calculation, how it was incorrect, to what degree royalties were underpaid, or when they provided "ample opportunities to cure." *Id.* ¶¶ 48–50. The Dr. Tennant Parties conclude the Senergy Parties owe $2 million in royalties without explaining—even in simple terms—how they arrived at this figure. *Id.* ¶ 52. For the Dr. Tennant Parties to then conclude the Senergy Parties "deliberately remained silent, failed to disclose the information, and made intentional misrepresentations" is an unreasonable inference, especially under Rule 9(b)'s heightened pleading standards. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996) (noting rote conclusory allegations that the defendants "knowingly did this" or "recklessly did that" fail to meet the heightened pleading requirements of Rule 9(b)).

Further, the economic loss rule applies to the Dr. Tennant Parties' fraud claim rooted in contractual damages. *See, e.g., Baxsto, LLC v. Roxo Energy Co., LLC*, 668 S.W.3d 912, 941 (Tex. App.—Eastland 2023, pet. filed) ("Whether or not Baxsto's fraud claims are barred by the economic loss rule is dependent on the source of Appellees' duty to act."); *Drake v. Bank of Am. Corp.*, No. CV H-15-1639, 2016 WL 6909287, at *5 (S.D. Tex. Mar. 9, 2016) ("Plaintiffs' fraud claim is barred by Texas' economic loss rule."); *Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, No. 05-17-01144-CV, 2019 WL 1219110, at *7 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (appellant failed to "explain why its claims for fraud in the performance of the contract . . . are not barred by the economic loss rule"). The Dr. Tennant Parties' reliance on fraudulent inducement caselaw is irrelevant—they do not assert a fraudulent inducement claim. *Id.* at *7–8 (differentiating fraudulent inducement from fraud).

### 7. <u>Count XII:</u> **Constructive trust is a remedy, not a cause of action.**

The Court should dismiss the constructive trust claim because it does not exist under Texas law. *See Roach v. Berland*, No. 3:13–CV–4640–D, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014) ("Accordingly, the court dismisses the constructive trust cause of action as a *claim* against Trivista and Pugliese . . . .") (emphasis in original).

## CONCLUSION

For the reasons discussed above, Plaintiffs Marten Group, Inc. d/b/a Senergy Medical Group and Scott Tennant ask the Court to dismiss Defendant Jerald Tennant, MD's Counts I, III, and IV under Rule 12(b)(1) and Defendants Jerald Tennant, MD's and Tennant Devices and Accessories, LLC's Counts II, III, IV, VIII, IX, and XII under Rule 12(b)(6).

November 20, 2024

Respectfully submitted,

**GRIFFITH BARBEE PLLC**

/s/ *Joshua Yun*

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Kirk Voss
Texas Bar No. 24075229
Kirk.Voss@griffithbarbee.com

Joshua Yun
Texas Bar No. 24120335
Joshua.Yun@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 910
Dallas, Texas 75201
(214) 446-6020  | main
(214) 446-6021  | fax

**Counsel for Plaintiffs**

## CERTIFICATE OF WORD COUNT

The undersigned certifies this document contains 2,152 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

Dated: November 20, 2024.

/s/ *Joshua Yun*
Joshua Yun

## CERTIFICATE OF SERVICE

The undersigned certifies this document was filed electronically in compliance with LR 4.1. As such, it was served on all counsel of record on November 20, 2024.

Dated: November 20, 2024.

/s/ *Joshua Yun*
Joshua Yun