## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

MARTEN GROUP, INC. d/b/a
SENERGY MEDICAL GROUP and
SCOTT TENNANT,

     Plaintiffs,

v.

JERALD TENNANT, MD, JOHN
TENNANT, TERESA JESSEN
TENNANT, JARED TENNANT,
TENNANT DEVICES AND
ACCESSORIES, LLC, and
CURADOR,
LLC,
     Defendants.

Case No. 3:24-cv-01852

**JURY TRIAL DEMANDED**

## <u>DEFENDANTS' EMERGENCY MOTION FOR CONTINUANCE</u>

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................... 2

       A.    Dr. Tennant Is Central to the Allegations in This Litigation ............... 2

       B.    Defendants Have Diligently Pursued Requesting and Responding to
             Discovery .................................................................................. 5

       C.    Dr. Tennant Is Suffering from Severe Health Issues .......................... 8

III.   LEGAL STANDARD ............................................................................ 9

IV.    ARGUMENT ....................................................................................... 10

       A.    Despite Their Diligence in Pursuing Discovery in this Case,
             Defendants Cannot Reasonably Meet the Discovery and Pre-Trial
             Deadlines Due to Dr. Tennant's Current Health Conditions .............. 10

       B.    The Requested Modification Is Important Because Dr. Tennant's
             Knowledge and Participation Is Critical to the Litigation ................. 16

       C.    Any Prejudice to Plaintiffs from Delay Is Minimal and Outweighed
             By Defendants' Diligence, Their Detailed Explanations for This
             Request, and the Importance of Dr. Tennant's Participation .............. 18

V.     CONCLUSION ..................................................................................... 20

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

# TABLE OF AUTHORITIES

## Cases

*Beam v. Caliber Home Loans, Inc.*,
  No. 3:19-cv-1201-M-BT, 2019 WL 9103414 (N.D. Tex. Dec. 6, 2019)........9

*Buchanan v. Sirius XM Radio, Inc.*,
  No. 3:17-cv-0728-D, 2018 WL 1932825 (N.D. Tex. Apr. 24, 2018)...........17

*Cf. Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*,
  No. 3:12-cv-0548-D, 2014 WL 80722 (N.D. Tex. Jan. 9, 2014).................19

*EEOC v. Serv. Temps, Inc.*,
  No. 3:08-cv-1552-D, 2009 WL 3294863 (N.D. Tex. Oct. 13, 2009)............15

*Gile v. Dolgen California, LLC.*,
  No. 5:20-cv-01863-MCS-SP, 2022 WL 20717550
  (C.D. Cal. Mar. 7, 2022)................................................................................13

*Hanley v. Kroger Co.*,
  No. 3:24-cv-1197-D, 2025 WL 992579 (N.D. Tex. Apr. 2, 2025).........17, 18

*Klein v. Fed. Ins. Co.*,
  Nos. 7:03-cv-102-D, 7:09-cv-094-D, 2015 WL 6561239
  (N.D. Tex. Oct. 29, 2015)......................................................................17, 19

*Mejia Ruiz v. Home Depot U.S.A., Inc.*,
  No. 3:22-cv-2266-D, 2024 WL 2982042 (N.D. Tex. June 13, 2024).....18, 19

*Palatkevich v. Choupak*,
  No. 12-cv-1681-CM-MHD, 2014 WL 5463371 (S.D.N.Y. Oct. 22, 2014)..13

*Parks v. CRST Expedited, Inc.*,
  No. 3:19-cv-950-BT, 2021 WL 7906861 (N.D. Tex. June 16, 2021).....10, 16

*Puig v. Citibank, N.A.*,
  514 F. App'x 483 (5th Cir. 2013)...............................................................10

*Rodrigues v. US Bank Nat'l Ass'n*,
  No. 3:20-cv-0291-D, 2021 WL 2077650 (N.D. Tex. May 24, 2021)...........10

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

*Scott v. Cty. of Marion, S.C.,*
        No. 1:18-cv-0047-RMG, 2019 WL 5788084 (D.S.C. Nov. 6, 2019) ...........12

*Squyres v. Heico Cos.,*
        782 F.3d 224 (5th Cir. 2015) ..........................................................................10

*United States v. Umbrella Fin. Servs., LLC,*
        No. 3:22-cv-2759-D, 2024 WL 117153 (N.D. Tex. Jan. 10, 2024).............20

**Statutes/Rules**
FRCP 16(b)(4)..............................................................................................................9

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

## I.    INTRODUCTION

Defendants Jerald Tennant, M.D. ("Dr. Tennant"), Jared Tennant, John Tennant, Teresa Jessen Tennant, Tennant Devices and Accessories, LLC ("TDA"), and Curador, LLC (collectively, the "Defendants") respectfully request a six-month continuance of the discovery and pre-trial deadlines set forth in the Scheduling Order entered by the Court in this case on September 19, 2024 (the "Scheduling Order") (Dkt. 31).

Good cause exists for the requested modification based on Dr. Tennant's current medical conditions.  Dr. Tennant is experiencing a health crisis, as set forth in detail in the attached declarations and three separate opinions from his medical providers.  Dr. Tennant's conditions currently prevent and will continue to prevent him from meaningfully participating in discovery unless he is permitted to undergo and adequately recover from recommended and extensive medical treatments over the next six months.

As set forth below, and as is apparent from the Plaintiffs' Complaint and their 80 requests for production propounded to Dr. Tennant, he possesses unique knowledge and information essential to the resolution of the issues.  Dr. Tennant's participation is key to the Defendants' ability to complete discovery, including preparation to take key depositions.  Yet Dr. Tennant's physical limitations due to

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

health issues not only restrict his ability to attend to the rigors of this lawsuit and demands of extensive discovery propounded but also detrimentally impact his ability to participate and defend against Plaintiff's claims as well as pursue his own counterclaims in this case. Prior to these health issues, Defendants diligently pursued reasonable and timely discovery in this case, including issuance of Defendants' expert disclosure on June 2, 2025, and have objected and responded to Plaintiffs' discovery requests, the majority of which were not propounded until April 4, 2025.

Dr. Tennant should not be forced to choose between preserving his health and participating in the defense and prosecution of his intellectual property rights in this matter. For these reasons, and because any prejudice to the Plaintiffs resulting from the requested modification is speculative, minimal, and outweighed by the benefits, Defendants respectfully request that the Court grant this motion.

## II.    BACKGROUND

### A.    Dr. Tennant Is Central to the Allegations in This Litigation.

Scott Tennant and Marten Group, Inc., d/b/a Senergy Medical Group ("Senergy") (collectively, the "Plaintiffs") filed this lawsuit against the Defendants on July 21, 2024. Scott is Dr. Tennant's stepson. Dr. Tennant Decl. ¶ 4. The Plaintiffs' claims arise out of the agreements by which Dr. Tennant granted Scott a

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

license to use Dr. Tennant's trademarks (the "Tennant Marks") to sell micro-

current therapy medical devices designed and developed by Dr. Tennant (the

"Tennant devices"), in exchange for a royalty payment from devices sales (the

"licensing agreements").

As the Plaintiffs' Complaint makes clear, Dr. Tennant is central to this

litigation.  The Plaintiffs' claims and supporting allegations focus almost

exclusively on the rights, actions, and states of mind of Dr. Tennant.  Specifically,

the Plaintiffs' claims include (1) a claim for declaratory judgment that Dr. Tennant

has no rights to the Tennant devices and the licensing agreements are invalid and /

or unenforceable, including because there was no "meeting of the minds" between

Dr. Tennant and Scott, *see* Compl. ¶¶ 41-49 (Count I); (2) a claim for declaratory

judgment that Dr. Tennant does not own the Tennant Marks or have any rights to

use or license them, including because he abandoned them, *see id.* ¶¶ 50-58 (Count

II); (3) a claim for cancellation of Dr. Tennant's registrations of the Tennant Marks

based in part on his alleged abandonment of them, *see id.* ¶¶ 59-62 (Count 3); (4) a

claim that Dr. Tennant had a fiduciary relationship with the Plaintiffs and breached

a fiduciary duty he allegedly owed them by, among other things, "threatening

[Plaintiffs'] business partners" and acting with "malice, fraud, or gross

negligence," *id.* ¶¶ 63-69 (Count 4); (5) a claim that Dr. Tennant and the other

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

Defendants "intentionally and willfully interfered with Senergy's contracts with Avazzia," *id.* ¶¶ 70-75 (Count 5); (6) claims that Dr. Tennant "has money that in equity and good conscience belongs to Senergy" and has "become unjustly enriched" with "funds received from Plaintiffs to which [he] was not entitled," *id.* ¶¶ 76-79 (Counts 6 and 7); and (7) a claim that Dr. Tennant conspired with the other Defendants "to eliminate Plaintiffs from the marketplace by unlawful means," including by "extort[ing]" Plaintiffs, *id.* ¶¶ 32-34, 80-86 (Count 8). In support of these claims, the Plaintiffs devote substantial allegations to disputing Dr. Tennant's role in the conception, design, development, manufacture, and marketing of the Tennant devices. *See, e.g.*, Compl. ¶ 14-23 (attempting to minimize this role).

Accordingly, the Defendants' defenses and counterclaims also focus on Dr. Tennant's rights and actions. Specifically, the Defendants' counterclaims are based on (1) Dr. Tennant's ownership of and rights to the Tennant Marks and his injuries caused by the Plaintiffs' infringement and dilution of them and other related unlawful conduct, *see* Defs.' Original Answer & Countercl. ¶¶ 67-86 (Counts I-IV); (2) Dr. Tennant's rights to his name and likeness in connection with the advertising and marketing of the Tennant devices and his injuries caused by the Plaintiffs' unlawful misappropriation of his name and likeness, *see id.* ¶¶ 87-91

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

(Count V); (3) Dr. Tennant's rights to royalty payments under the licensing agreements, his discovery and investigation of the Plaintiffs' breaches of the agreements, and his injuries caused by those breaches, *see id.* ¶¶ 92-98 (Count VI); and (4) other claims for equitable and other relief based on Dr. Tennant's rights identified above, *see id.* ¶¶ 99-136 (Counts VII-XIII).

## B. Defendants Have Diligently Pursued Requesting and Responding to Discovery.

The Defendants have adhered to all deadlines set forth in the Scheduling Order to date.  Farmer Decl. ¶ 2.  Under the Scheduling Order, discovery remains open and the remaining deadlines are as follows:

| Deadline | Date |
|---|---|
| Completion of Discovery | August 26, 2025 |
| Expert Objections | September 26, 2025 |
| Dispositive Motions | September 26, 2025 |
| Pretrial Disclosures and Objections | December 16, 2025 for disclosures and objections 14 days thereafter |
| Pretrial Materials | January 6, 2026 |
| Settlement Conference | 10 days prior to pretrial conference |
| Exchange of Exhibits | 2 business days prior to pretrial conference |
| Pretrial Conference | February 2, 2026 |
| Trial | 3-week docket beginning February 3, 2026 |

Since entry of the Scheduling Order on September 19, 2024, Defendants

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

have diligently engaged in discovery. Plaintiffs propounded **<u>209</u>** separate requests for production to the Defendants, including **<u>80</u>** requests for production to Dr. Tennant alone. Farmer Decl. ¶ 3; Dr. Tennant Decl. ¶ 6. Notably, Plaintiffs did not propound the vast majority of these requests (all but 8) until April 4, 2025, over six months into the discovery period. Farmer Decl. ¶ 4. Defendants, however, have timely provided responses and objections to each of these requests and produced over 1,500 documents in response. Farmer Decl. ¶ 7.

Defendants have pursued a reasonable and limited amount of discovery, propounding the majority of these requests in the early months of the discovery period. Specifically, on October 1, 2024, the Defendants served their first and primary set of requests for production on Scott Tennant and Senergy, with only 25 requests to Scott and 26 requests to Senergy. Farmer Decl. ¶ 11. Then, on January 24, 2025, the Defendants served a limited set of interrogatories on Scott and Senergy, with 5 interrogatories to Scott and 5 interrogatories to Senergy. Farmer Decl. ¶ 13. On March 3, 2025, Defendants served a limited additional set of discovery requests on Senergy, the Defendants' last discovery requests to date, which included only 5 additional requests for production and 5 additional interrogatories. Farmer Decl. ¶ 15. In addition, the Defendants provided their expert disclosure on June 2, 2025. Farmer Decl. ¶ 18.

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

Notwithstanding the Defendants' diligence, there is outstanding discovery to complete that requires Dr. Tennant's active participation. For example, Dr. Tennant's participation is critical in taking the depositions of the Plaintiffs, which the Defendants reserved for after they received documents from the Plaintiffs in response to their requests for production, as is standard practice to avoid a second deposition over later produced documents.  Farmer Decl. ¶ 19.  To date, the Plaintiffs have produced approximately 450 documents to date in response to the Defendants' requests for production, the majority of which they did not produce until January 29, 2025, nearly four months after the Defendants served their first set of requests for production.  Farmer Decl. ¶ 17.  Furthermore, the Plaintiffs have not yet responded to the Defendants' objections to the Plaintiffs' requests for production propounded to Dr. Tennant; thus, any conferral on the Defendants' objections remains outstanding.  Farmer Decl. ¶ 20.  Additionally, the Defendants' search for any additional responsive documents is ongoing; however, because the subjects of the Plaintiffs' requests span over multiple decades and responsive documents may be located in Dr. Tennant's hard copy files, the Defendants will require significant assistance from Dr. Tennant to identify, locate, and review any additional documents.  Farmer Decl. ¶ 21.  Finally, the Defendants must then consider and prepare any discovery and/or dispositive motions and complete

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

substantial pre-trial work, which will also require significant participation from Dr. Tennant to assist with and review dispositive motions, contribute to pretrial preparation and related decision processes, and prepare to participate at trial. Farmer Decl. ¶ 23.

### C.    Dr. Tennant Is Suffering from Severe Health Issues.

Earlier this month, undersigned counsel was made aware that Dr. Tennant is experiencing medical conditions that have severely impacted his ability to continue participating in this litigation. Farmer Decl. ¶ 27. The full extent of his medical condition and expected course of treatments were not known until June 13, 2025. *Id.* These conditions are set forth in detail in the attached declaration from Dr. Tennant and its exhibits—letters from three of Dr. Tennant's medical providers. Dr. Tennant Decl. ¶¶ 7-8 and Exs. A-1 - A-3.

On June 13, 2025, the undersigned counsel contacted Plaintiffs' counsel by phone to discuss this issue. Farmer Decl. ¶ 28. Defense counsel explained that Dr. Tennant could not read documents and was otherwise experiencing significant difficulty completing tasks critical to this litigation and offered to provide letters from Dr. Tennant's medical providers. *Id.* Defense counsel requested that Plaintiffs' counsel seek his clients' agreement to a six-month continuance in light of Dr. Tennant's health. *Id.*

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

On June 23, defense counsel provided to Plaintiffs' counsel copies of three letters from Dr. Tennant's medical providers.  Farmer Decl. ¶ 29.  Then on June 27, 2025, in response to Plaintiffs' counsel's request to share information with his clients and for authority supporting our request for a continuance or stay, I informed Plaintiffs' counsel that he could provide Plaintiffs with a general summary of Dr. Tennant's medical conditions and the impacts on his ability to participate in this litigation and citations to relevant legal authorities.  Farmer Decl. ¶ 30.  On July 1, 2025, I again spoke with Plaintiffs' counsel, who indicated he would discuss the request with Plaintiffs and provide their response the following day.  Farmer Decl. ¶ 31.  I informed Plaintiffs' counsel that we had prepared a motion to seek the necessary relief and that we were ready to file it but would delay doing so in order to receive their response to our request.  *Id.*  To date, Plaintiffs' counsel has not responded.  Farmer Decl. ¶ 32.  Therefore, on July 3, 2024, prior to filing this motion, I e-mailed Plaintiffs' counsel to indicate that we would proceed with the motion.  *Id.*

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) provides that a case schedule may be modified "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *Beam v. Caliber Home Loans, Inc.*, No. 3:19-cv-1201-M-BT, 2019

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

WL 9103414, at *1 (N.D. Tex. Dec. 6, 2019). Good cause requires "the movant to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Puig v. Citibank, N.A.*, 514 F. App'x 483, 487–88 (5th Cir. 2013) (per curiam) (internal quotation marks omitted). To determine whether a movant has met this standard, the Court considers four factors: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Rodrigues v. US Bank Nat'l Ass'n*, No. 3:20-cv-0291-D, 2021 WL 2077650, at *1 (N.D. Tex. May 24, 2021) (internal quotation marks omitted) (quoting *Squyres v. Heico Cos.,* 782 F.3d 224, 237 (5th Cir. 2015)). "The Court considers these four factors holistically, not as a mechanical checklist." *Parks v. CRST Expedited, Inc.*, No. 3:19-cv-950-BT, 2021 WL 7906861, at *1 (N.D. Tex. June 16, 2021) (citation omitted). Defendants satisfy this standard and the case schedule should be continued.

## IV.   ARGUMENT

### A.   Despite Their Diligence in Pursuing Discovery in this Case, Defendants Cannot Reasonably Meet the Discovery and Pre-Trial Deadlines Due to Dr. Tennant's Current Health Conditions.

Defendants have worked diligently to complete significant discovery to

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

date, including by propounding reasonable and limited discovery requests early in the discovery period and timely responding to Plaintiffs' extensive discovery requests and producing responsive documents. *See, e.g.*, Farmer Decl. ¶¶ 7, 11, 13. The Defendants have remained diligent despite Plaintiffs' burdensome discovery requests as well as their significant delays in propounding these requests and producing responsive documents. Farmer Decl. ¶¶ 3-4, 17.

Notwithstanding their diligence, under the current discovery deadline, the Defendants will be unable to adequately prepare to take and defend depositions in this case due to Dr. Tennant's severe medical conditions. Farmer Decl. ¶ 19. Dr. Tennant's health has required and will continue to require Dr. Tennant to undergo and recover from extensive medical treatments over the next six months. Dr. Tennant Decl. ¶ 8 & Exs. A 1-3. These treatments and Dr. Tennant's recovery will not only take time away from work associated with this litigation, but to be successful, will also require Dr. Tennant to temporarily remove the physical and mental strains of participating in this lawsuit. Dr. Tennant Decl. ¶ 8 & Exs. A 1-3. At present, Dr. Tennant cannot meaningfully participate in discovery or assist counsel in preparing for depositions because he cannot read materials produced or provided in discovery, cannot concentrate for extended periods of time, and consequently has had substantial difficulty identifying and locating documents

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

that may be responsive to outstanding discovery requests even with the aid of others. Dr. Tennant Decl. ¶ 7-8. Based on his medical diagnoses and his medical providers' recommendations, Dr. Tennant's conditions are expected to improve following treatment if Dr. Tennant adheres to the protocols identified, which includes sufficient rest and a break from the physical and mental burdens and stresses of this lawsuit. Dr. Tennant Decl. ¶ 8 & Exs. A 1-3. Thus, while Dr. Tennant is receiving and recovering from these treatments over the next six months, he will remain unable to meaningfully participate as needed in the litigation process, including but not limited to identifying and collecting responsive materials, reviewing produced materials to prepare for depositions, assisting with and reviewing dispositive motions, and contributing to the pretrial preparation and related decision processes. Dr. Tennant Decl. ¶¶ 7-8; Farmer Decl. ¶¶ 23.

A debilitating illness rendering a party or other key participant unable to meaningfully participate in litigation is a "textbook example" of good cause for a modification of a case schedule under Rule 16(b)(4). *See Scott v. Cty. of Marion, S.C.*, No. 1:18-cv-0047-RMG, 2019 WL 5788084, at *1 (D.S.C. Nov. 6, 2019) (modifying schedule based on expert witness's "declining health," which made him unable "to testify or assist Plaintiff with the case," because "[a]s other courts

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

have recognized, the illness of an expert is a 'textbook example' of good cause under Rule 16(b)" (collecting cases)).  This is especially true where, as here, the party requesting the modification has been diligent in filing their request for modification and has provided adequate documentation of the illness.  *See Gile v. Dolgen California, LLC*, No. 5:20-cv-01863-MCS-SP, 2022 WL 20717550, at *1 (C.D. Cal. Mar. 7, 2022) (granting continuance request based on illness of plaintiffs' lead counsel where plaintiffs "were . . . diligent in filing. . . [the request] as soon as it became apparent that their lead counsel could no longer practice law"); *Palatkevich v. Choupak*, No. 12-cv-1681-CM-MHD, 2014 WL 5463371, at *1 n.2 (S.D.N.Y. Oct. 22, 2014) (observing that "[t]he illness and sudden unavailability of a designated expert is certainly good cause to modify a Rule 16 scheduling order, particularly where the plaintiffs have been diligent in dealing with the problem" and have "adequately documented . . . [the illness] based on a note from [the expert's] treating physician").

The importance of Dr. Tennant's participation in this litigation cannot be overstated. Dr. Tennant possesses unique knowledge critical to the resolution of key issues in dispute in this case.  For example, Dr. Tennant, as the developer of the Tennant devices, the developer and owner of the related Marks, and a signatory to the related licensing agreements, is the most reliable, or in some

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

cases *only*, source of knowledge regarding the conception, design, development, and use of the Tennant devices, his ownership and use of the Tennant Marks, and the context, meaning, and Scott's material breaches of the licensing agreements. *See* Dr. Tennant Decl. ¶¶ 2-3; Farmer Decl. ¶ 24. Although other Defendants have knowledge of certain aspects of these issues in more recent years, Dr. Tennant is the only Defendant with comprehensive knowledge and understanding of these issues dating back to the Tennant devices' conception and the beginning of Dr. Tennant's licensing relationship with Scott Tennant. Farmer Decl. ¶ 25

Plaintiffs recognize that Dr. Tennant's knowledge and participation is essential to resolving the issues in this case. As discussed in Part I.A *supra*, the Complaint's claims and allegations are based upon Dr. Tennant's rights, actions, and states of mind, including his role in the conception, design, development, manufacture, and marketing of the Tennant devices. *See, e.g.*, Compl. ¶ 14-23 (attempting to minimize this role).

Tellingly, the Plaintiffs have propounded **80** requests for production to Dr. Tennant alone, including 75 requests for production on April 4, 2025, about the time that Dr. Tennant first began noticing and experiencing some of these health issues. Farmer Decl. ¶ 3, 6; Dr. Tennant Decl. ¶ 6. The number of requests for production propounded to Dr. Tennant is approximately two to four times the

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

number of requests for production propounded to any other Defendant. *See* Farmer Decl. ¶¶ 3, 5-6. Additionally, the Plaintiffs' Initial Disclosures identify an extensive list of key topics upon which Dr. Tennant has knowledge, including:

> (1) the contractual, business, and other relationships between and among the parties; (2) registration, ownership, and use of TENNANT-related marks and Dr. Tennant's name and/or likeness; (3) agreements between and/or among the parties purporting to grant Dr. Tennant royalties from Senergy's sale of certain medical devices, and the accounting of royalties paid to Dr. Tennant; (4) the inception, development, manufacturing, marketing, service, and quality control of the medical devices; (5) contractual agreements and communications with third parties concerning the sale, manufacturing, and service of the medical devices; (6) financial information concerning Senergy's costs and expenditures accrued by Dr. Tennant; (7) the June 21, 2024 "Termination of Royalty Agreement and all Amendments" letter sent by Dr. Tennant to Scott and Senergy; (8) the June 21, 2024 "Confidentiality, Unauthorized Disclosure, and Non-Disparagement Agreement" letter sent by Defendants to Scott and Senergy; (9) the June 24, 2024 "Cease and Desist" letter sent by Dr. Tennant to Avazzia; and (10) other information relevant to the claims and defenses asserted in the action.

Farmer Decl. ¶ 26.

Defendants' detailed and supported explanation for their request and their prompt notice of their request to the Plaintiffs and this Court, taken together with their diligence in pursuing discovery, in and of itself weighs strongly in support of the Defendants' requested modification. *See EEOC v. Serv. Temps, Inc.*, No. 3:08-cv-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (The court "does not mechanically count the number of factors that favor each side. And it

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order."); *cf. Parks*, 2021 WL 7906861, at *1  (denying request to continue trial date based on plaintiff's heart condition where plaintiff delayed advising the court of the condition for months, "there is nothing in the record to suggest that a medical professional recently diagnosed Plaintiff with a heart condition or determined that she needs surgery," and "Plaintiff's explanation is vague and unsupported by any evidence that a doctor advised her that she would be unable to attend trial as scheduled").

### B.    The Requested Modification Is Important Because Dr. Tennant's Knowledge and Participation Is Critical to the Litigation.

The requested modification is important because Dr. Tennant cannot meaningfully participate in discovery, motion practice, and trial preparation—yet, is central to the entire litigation.  His ability to participate meaningfully here is contingent on his ability to adequately review documents, remain current on the activities in the case, and make informed decisions that impact all aspects of the pre-trial and trial process.  As evidenced by Dr. Tennant's Declaration and multiple supporting letters from his medical providers, Dr. Tennant is unable at this time to perform these tasks without further, significant impact to his health. *See* Dr. Tennant Decl. ¶¶ 7-8 & Exs. A 1-3.  Courts have recognized that where a modification of a discovery or trial schedule is necessary to permit critical

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

discovery that facilitates a decision on the merits, the modification is important. *See, e.g.*, *Hanley v. Kroger Co.*, No. 3:24-cv-1197-D, 2025 WL 992579, at *3 (N.D. Tex. Apr. 2, 2025) (granting motion for continuance in part because "permitting [plaintiff] to pursue discovery . . . is important" and "[t]he spirit of the Rules is to decide cases on the merits"); *Buchanan v. Sirius XM Radio, Inc.*, No. 3:17-cv-0728-D, 2018 WL 1932825, at *2-3 (N.D. Tex. Apr. 24, 2018) (concluding requested extension of deadline to file class certification was important because it would permit the movant to consider and pursue discovery that was "foundational" to motion); *Klein v. Fed. Ins. Co.*, Nos. 7:03-cv-102-D, 7:09-cv-094-D, 2015 WL 6561239, at *3 (N.D. Tex. Oct. 29, 2015) (class plaintiffs' proposed modification was "very important" because it would permit discovery that "relates to a key defense on which [the defendant] relies, and that . . . appears to be highly probative concerning the merits of that defense").

Continuing the remaining deadlines in this case for 6 months is necessary to give Dr. Tennant the time he needs to complete or make critical progress on the treatments recommended by his medical providers, as well as to adequately recover from such treatments.  Dr. Tennant Decl. ¶ 8 & Exs. A-1-A-3.  Dr. Tennant's medical providers are optimistic that these treatments will improve his health conditions and his ability to participate in this litigation.  *See* Dr. Tennant Decl.

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

Exs. A-1-A-2.

The requested modification of the schedule in this case is important and, along with the Defendants' diligence in discovery and reasonable explanation for its requested modification, weighs strongly in favor of granting this motion. *See, e.g.*, *Hanley*, 2025 WL 992579, at *3 (granting plaintiffs' requested modification because it permitted discovery "facilitating the resolution of her case on the merits" and plaintiffs' lead counsel "acted with diligence to move to amend the schedul[e]" when his "illness coincided with his learning of the potential discovery dispute").

### C.    Any Prejudice to Plaintiffs from Delay Is Minimal and Outweighed By Defendants' Diligence, Their Detailed Explanations for This Request, and the Importance of Dr. Tennant's Participation.

Defendants acknowledge that granting this motion for a continuance will delay resolution of this matter and that, on this basis, some courts have found potential prejudice to a non-moving party that may not be cured by the availability of a continuance. However, the risk of any such prejudice from a limited delay is "negligible" and outweighed by "the importance of facilitating the resolution of [this] case on the merits." *Hanley*, 2025 WL 992579, at *3 (granting a four-month continuance of discovery deadline where plaintiff "demonstrated that the importance of facilitating the resolution of her case on the merits outweighs the

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

negligible risk of prejudice from any resulting delay"); *Mejia Ruiz v. Home Depot U.S.A., Inc.*, No. 3:22-cv-2266-D, 2024 WL 2982042, at *3 (N.D. Tex. June 13, 2024) (granting defendant's modification request because "any potential prejudice to [plaintiff] as a result of this modification would be outweighed by [the] benefit" of allowing important discovery); *Klein*, 2015 WL 6561239, at *3 (granting plaintiff's modification request because "[a]lthough [defendant] will incur prejudice due to the additional costs and delay, the court is not persuaded that the nature or extent of such prejudice is sufficient . . . to deny the class plaintiffs the discovery they seek").

Moreover, the procedural posture of this case further supports that any potential prejudice to the Plaintiffs of granting this motion would be minimal. This is the Defendants' first request for a continuance and the requested continuance is limited to six months for a medical necessity supported by proper medical documentation. Moreover, Defendants have diligently pursued and responded to discovery and made significant progress. *See* Farmer Decl. ¶¶ 7-11, 13, 15, 18. As of the date of this motion, discovery remains open and no dispositive motions have been filed or briefed. *Cf. Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, No. 3:12-cv-0548-D, 2014 WL 80722, at *4 (N.D. Tex. Jan. 9, 2014) (denying request to re-open discovery after filing of a summary judgment motion in part because "it

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

could precipitate a costly second round of briefing").

To the extent the Plaintiffs assert that a delay in the resolution of the case would impact their business, any such prejudice is outweighed by the other factors weighing in favor of the requested continuance. *See United States v. Umbrella Fin. Servs., LLC*, No. 3:22-cv-2759-D, 2024 WL 117153, at *5 (N.D. Tex. Jan. 10, 2024) (granting a six-month extension of discovery and other deadlines because "[a]lthough[] . . . this extension will likely affect the defendants' businesses, this consideration does not outweigh the other factors in this analysis, which all point toward allowing an extension").

## V.    CONCLUSION

For the reasons explained above, and weighing the relevant factors holistically, there exists good cause to grant this motion for the requested modification of the Scheduling Order in this case.

Dated:  July 7, 2025                    Respectfully submitted,

**MARTINEZ & FARMER LLP**

*/s/Tyler L. Farmer*
*/s/Ariel A. Martinez*
Tyler L. Farmer, WSBA No. 39912
*Pro Hac Vice*
Ariel A. Martinez, WSBA No. 54869
*Pro Hac Vice*
4020 East Madison St., Suite 300
Seattle, WA 98112

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

Tel: (206) 208-2270
E: tyler@mfseattle.com
E: ariel@mfseattle.com

**BATTISTE CLEMENT PLLC**

Alison Battiste Clement
Texas Bar No. 24062603
Gabriela Isuani Monahan
Illinois Bar No. 6212056
2626 Cole Avenue, Suite 300
Dallas, TX 75204
Tel: (214) 540-7206
Fax: (972) 629-9818
E: alison@battisteclement.com
E: gabriela@battisteclement.com

**ATTORNEYS FOR DEFENDANTS**

**TENNANT DEVICES AND ACCESSORIES, LLC**

*Jerald L Tennant*
_____
By: Dr. Jerald Tennant

**CURADOR, LLC**

*John Tennant*
_____
By: John Tennant

*Jerald L Tennant*
_____
Dr. Jerald Tennant

*Jared Tennant*
_____
Jared Tennant

*John Tennant*
_____
John Tennant

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

_____

Teresa Jessen Tennant

**DEFENDANTS**

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned certifies that the parties have complied with the meet and confer requirements of Local Rule CV-7(h) and that the foregoing motion and relief sought therein is unopposed.

By: /s/Tyler L. Farmer
Tyler L. Farmer

## CERTIFICATE OF WORD COUNT

Pursuant to Section II.A. of the Court's Procedures for Cases Assigned to District Judge Ada Brown and Standing Order, the undersigned hereby certifies that, per the word-processor register, the foregoing Motion contains 4,385 words, excluding the case caption, signature block, and certificates.

By: /s/Tyler L. Farmer
Tyler L. Farmer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through CM/ECF on July 7, 2025.

By: /s/Tyler L. Farmer
Tyler L. Farmer

Doc ID: 19a84c1aacd8c9285cd8daa8becf32fa5331c8f7